Mary **KESSLER**, Plaintiff-Appellant,

v.

**BOARD OF REGENTS, et al.,**
**Defendants-Appellees.**

No. 83–5103.

United States Court of Appeals,
Sixth Circuit.

Submitted Jan. 9, 1984.
Decided July 11, 1984.

Mary Kessler, pro se.

William M. Leech, Jr., Atty. Gen. of Tenn., Susan Short-Kelly, Asst. Atty. Gen., Nashville, Tenn., for defendants-appellees.

Before EDWARDS and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff-appellant, Mary Kessler, appeals from the district court's dismissal of her civil rights action based on its conclusion that the action was barred by the statute of limitations. We affirm.

## I.

On August 30, 1982, Kessler filed suit against the defendants alleging that they violated her rights under the First, Fifth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. §§ 1983, 1985 and 1986. Kessler's allegations arose out of her employment as a resident physician at East Tennessee State University. Initially, she entered a contract with the University which provided that she would perform the duties of a PGY I resident physician and graduate student assistant in exchange for salary and training. This contract was for the period from February 24, 1979 until February 23, 1980. Kessler completed that contract and

entered into a PGY II contract with the University which was to be effective from February 24, 1980 until February 23, 1981.

In May, 1980, however, prior to the completion of Kessler's PGY II contract, defendant John Smith, Associate Department Chairman, allegedly questioned Kessler's eligibility to be in the residency program. Kessler claims that no reasonable procedure was offered to resolve this issue. Kessler further contends that Smith told her that if she wished to remain in the residency program, she would have to help someone who Smith knew was illegally employed by the University. Kessler refused to help and now claims that because of her refusal, Smith and defendant Stanley Weiner, the Department Chairman, harassed her.

Smith and Weiner allegedly harassed Kessler by deleting her PGY I contract from the American Medical Association Physician Registry, falsifying her academic record by removing or failing to include favorable evaluations, and including in her record untrue and unjustified unfavorable comments which she was not given a meaningful opportunity to refute. Furthermore, they allegedly threatened to have her Wyoming medical license revoked.

Kessler attempted unsuccessfully to secure a remedy from the Acting Dean, defendant Sheppard. Due to the futility of her efforts to have her record cleared, Kessler resigned from the University on August 27, 1980, claiming that the University breached its contract. She also requested a hearing. On August 29, 1980, Kessler was terminated by the University in a manner which ignored both her attempted resignation and the University procedures for terminating employees for cause.

Kessler appealed her termination to the President of the University, the Chancellor, and the Board of Regents of the State University and Community College System of Tennessee. Kessler claims, however, that the appeals procedure did not provide her with due process because she was not told the time, place, purpose, or procedural rules of appeal. In addition, she was not afforded an opportunity to discover evidence or provided with a procedure to obtain documents or summon witnesses. Kessler claims that she was not even informed of the reason for her termination until March, 1981, two months after the President of the University upheld her termination.

In May, 1981, the Chancellor upheld Kessler's termination but at the same time he informed her that her record had been amended to show that she had resigned for personal reasons. Despite the amendment to Kessler's records to show that she resigned, defendant Smith sent a letter to a potential employer in June, 1981, stating that Kessler had been terminated. By letter dated June 30, 1981, the Board of Regents also upheld Kessler's termination, stating that it "found no basis to reverse the decision of the Chancellor...."

Kessler filed suit against the University in August, 1981, but that suit was dismissed pursuant to Fed.R.Civ.P. 8(a)(1). In November, 1981, Kessler informed each member of the Board of Regents of the alleged violations of her rights. She was informed in December, 1981, however, that the Board's June, 1981 decision was final.

In February, 1982, as a result of a decision made by the Chancellor, the University President, and the General Counsel to the Board of Regents, Dr. Kessler was offered a hearing limited in scope to one phrase in a letter sent to the Wyoming Board of Medical Examiners by defendant Weiner. Since this matter had been resolved in Wyoming nine months earlier, the proposed hearing was dismissed pursuant to a motion by the University. Kessler continued her attempt to obtain a bona fide due process hearing on relevant matters. She received no response from any member of the Board of Regents.

The present complaint was filed on August 30, 1982. Defendants moved to dismiss for lack of jurisdiction and failure to state a claim for which relief may be granted. Objection to the motion was timely filed. The Report and Recommendation of the Magistrate advised that defendants'

motion to dismiss be granted. The district court adopted the Magistrate's recommendation and dismissed the case based upon the applicable statute of limitations.

## II.

■ It is undisputed on this appeal that a one-year statute of limitations applies to civil rights cases arising in Tennessee. T.C.A. § 28-3-104; *Wright v. State of Tennessee*, 628 F.2d 949, 951 (6th Cir.1980). The issue that is disputed is when Kessler's cause of action actually accrued. When allegations of discrimination involve a termination from employment, the critical date is the date of termination; the existence of a grievance procedure does not change the importance of this date. *Delaware State College v. Ricks*, 449 U.S. 250, 258, 261, 101 S.Ct. 498, 504, 505, 66 L.Ed.2d 431 (1980). Accordingly, defendants contend that Kessler's cause of action accrued on August 29, 1980, more than two years prior to the filing of the present action.

■ In *Delaware v. Ricks*, a faculty member alleged that he had been denied academic tenure because of his national origin. In February, 1973, the Faculty Committee on Promotions and Tenure (the tenure committee) recommended that Ricks not receive a tenured position. The tenure committee, however, agreed to reconsider its decision the following year. Upon reconsideration in February, 1974, the committee adhered to its earlier recommendation. On March 13, 1974, the College Board of Trustees formally voted to deny tenure to Ricks.

Dissatisfied with the decision, Ricks immediately filed a grievance with the Board's Education Policy Committee (the grievance committee), which in May, 1974 held a hearing and took the matter under submission. During the pendency of the grievance, the College administration continued to plan for Ricks' eventual termination. Like many colleges, however, Delaware State had a policy of not immediately discharging a faculty member who was denied tenure. Instead, such a person would be offered a "terminal" contract to teach one additional year. Accordingly, on June 26, 1974 the Trustees informed Ricks that he would be offered a one year "terminal" contract that would expire June 30, 1975. Ricks signed the contract on September 4, 1974. Shortly thereafter, on September 12, 1974, the Board of Trustees notified Ricks that it had denied his grievance. Ricks filed his lawsuit on September 9, 1977. A three-year statute of limitations applied and the issue addressed by the Supreme Court was when Ricks' cause of action accrued.

Ricks claimed that the action accrued on June 30, 1975, when he was actually discharged. The court, however, found that the only discriminatory charge alleged in Rick's complaint was the failure of the college to grant him tenure. The complaint did not allege discriminatory discharge. Accordingly, the Court held that the limitations period commenced to run when the tenure decision was made and Ricks was notified. The Court further held that such decision had been made apparent no later than June 26, 1974.

The E.E.O.C., in an *amicus* brief, contended that the tenure decision was not made until September 12, 1974 when the Board notified Ricks that his grievance had been denied. The E.E.O.C. argued that prior to that date it was possible that the tenure decision would be reversed. They further argued that the pendency of the grievance should toll the statute of limitations. The Court rejected both arguments:

We do not find either argument to be persuasive. As to the former, we think that the Board of Trustees had made clear well before September 12 that it had formally rejected Ricks' tenure bid. The June 26 letter itself characterized that as the Board's "official position." Ibid. It is apparent, of course, that the Board in the June 26 letter indicated a willingness to change its prior decision if Ricks' grievance were found to be meritorious. But entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative. The grievance

procedure, by its nature, is a remedy for a prior decision, not an opportunity to influence that decision before it is made. As to the latter argument, we already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods. *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229 [97 S.Ct. 441, 50 L.Ed.2d 427] (1976). The existence of careful procedures to assure fairness in tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made. Cf. id., at 234–235 [97 S.Ct. at 446].

449 U.S. at 261, 101 S.Ct. at 505 (footnotes omitted). Applying the principles enunciated in *Ricks* to the case at bar, requires us, first, to examine Kessler's complaint and determine precisely what illegal acts are alleged. Second, we must determine when those illegal acts occurred and, accordingly, whether they are time barred.

First, Kessler alleges that the University breached its contract with her by harassing and intimidating her and terminating her in August 1980. All the events Kessler complains of up to and including Kessler's termination in August, 1980, are barred by the one year statute of limitations. She did not file this suit until August 30, 1982, over two years after these complained of events.

▪ Kessler, however, claims that she was deprived of her due process rights after she was terminated. She claims that she was never afforded an opportunity for a posttermination hearing, which is required when a person is deprived of a constitutionally protected right. *See, e.g., Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 356 (1979) (licensed harness racing trainer must be assured a prompt post suspension hearing that would proceed and be concluded without appreciable delay); *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). While it may be true that Kessler was deprived of her due process rights, the magistrate and the district court found that such deprivation

had occurred no later than June 30, 1981 when the Board of Regents notified Kessler of its decision to uphold the Chancellor's determination. More than one year elapsed between June 30, 1981 and August 30, 1982, when this action was actually filed.

Kessler claims, however, that the Board's letter dated June 30, 1981 did not state that any decision had been made, much less a final decision. She contends that it was not until she received a letter from the Governor dated December 14, 1981 that she was informed that the June 30, 1981 decision was final.

In its June 30, 1981 letter, the Board stated:

> In reference to our previous correspondence concerning the appeal by Dr. Mary Kessler, this is to advise that the Board found no basis to reverse the decision of the Chancellor at its June 26, 1981 meeting.

Although this letter is somewhat ambiguous with respect to its finality, it does indicate that the Board decided to uphold Kessler's termination at its June 26, 1981 meeting. Kessler is correct that the letter gives no indication whether the Board intended to consider the matter further. Nor does the letter clearly state that the Board voted to uphold Kessler's termination. It simply states that it found no basis to reverse her termination. The letter's ambiguous wording is not sufficient, however, to prevent Kessler's cause of action from accruing on June 30, 1981.

In *Ricks*, as noted earlier, the Board's June 26, 1974 letter indicated a willingness to change its prior decision of Ricks' grievance was found to be meritorious. Yet, that letter was deemed to commence the running of the limitations period. In the case at bar, the Board gave no indication that it would give any further consideration to Kessler's complaints. Therefore, the June 30 letter sufficiently apprised Kessler that her termination was upheld. Based on *Ricks*, even if the Board had specifically stated in its June 30 letter that its decision was *not* final, it would have

been sufficient to commence the running of the limitations period.

 Kessler's last contention is that the Board's June 30, 1981 letter was insufficient to commence the running of the limitations period because it failed to comply with the Uniform Administrative Procedures Act. *See* T.C.A. § 4–5–101 *et seq.* T.C.A. § 4–5–113(a) of the Act provides:

> 4–5–113. Final decision and orders—Notification of parties—Validity.—(a) A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact, conclusions of law, and reasons for the ultimate decision. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. Parties shall be notified in writing either personally or by mail of any decision or order and such written notice shall include a statement of a party's right to judicial review. A copy of the decision or order shall be delivered or mailed forthwith to each party or to his attorney of record.

It is well-settled that the Board of Regents is subject to the requirements of § 4–5–113(a). *State Board of Regents of Univ. v. Gray,* 561 S.W.2d 140 (Tenn.1978). Furthermore, it is clear that the Board's June 30, 1981 letter does not comply with Section 4–5–113(a). The entire letter, as quoted earlier, consists of only one sentence. It says absolutely nothing about Kessler's right to judicial review. Nor does it state findings of fact or conclusions of law. There is no indication, however, that the consequence of the Board's failure to comply with § 4–5–113(a) is to toll the statute of limitations. Kessler's remedy would have been to file a timely complaint with the district court so that the court could order the Board to comply with the statute. She has lost her right to contest the conformity of the notice by failing to file a timely complaint.

For the foregoing reasons, the judgment of the district court is AFFIRMED.