Ruth BURKHART; Reba G. Burnette,
Plaintiffs-Appellants,

v.

Helen RANDLES, individually and in her
official capacity as Clerk of the Crimi-
nal and Fourth Circuit Courts for Knox
County, Tennessee, and Knox County,
Tennessee, Defendants-Appellees.

No. 84–5054.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 14, 1985.

Decided June 18, 1985.

Peter Alliman, argued, Lee & Alliman,
Knoxville, Tenn., for plaintiffs-appellants.

Dale Workman, Knox County Law Director's Office, and Robert H. Watson, argued, Knoxville, Tenn., for defendants-appellees.

Before LIVELY, Chief Judge, KEITH, Circuit Judge, and BROWN, Senior Circuit Judge.

KEITH, Circuit Judge.

This is an appeal from a district court judgment entered against the plaintiffs after a jury adversely determined their civil rights suit filed pursuant to 42 U.S.C. Section 1983.[1] The plaintiffs sought to challenge the constitutionality of their terminations from employment by the defendants, Helen Randles and Knox County, Tennessee. The plaintiffs alleged that the dismissals violated their rights to freedom of political expression and to due process of law under the first and fourteenth amendments.[2] For the reasons set forth below, we reverse and remand this cause for a new trial.

## I.

### FACTS

The controversy giving rise to this appeal originated in the parties' place of employment, the Office of the Clerk for the Fourth Circuit and Criminal Courts of Knox County, Tennessee. At the time the plaintiffs filed this action in 1983, Helen Randles had held the elected position of Clerk in that office since 1974. As the ranking official in the office, Randles promulgated all county policy and exercised exclusive authority over office affairs.

Prior to their dismissals by Randles in 1982, the plaintiffs, Ruth Burkhart and Reba Burnette, had worked in the office as bookkeeper for twelve years and deputy clerk for five years, respectively. Both of the plaintiffs' jobs were deputy positions terminable at will by the defendant Randles.[3] Pursuant to this prerogative, Randles dismissed the plaintiffs from their jobs on August 6, 1982.

The events leading to the dismissals, as viewed by both parties, unfolded as follows: In preparation for the 1982 reelection campaign, Randles met with Martha Phillips, an employee, to set guidelines for employee contributions to Randles' campaign fund. Randles and Phillips agreed that, as in the past, half a month's salary minus deductions would constitute a fair contribution from each employee. Phillips and another employee calculated this amount for each employee and distributed the figures accordingly. At trial, the plaintiffs testified that they contributed their assigned amounts to satisfy what they understood was a condition for retaining their jobs. Randles, however, maintained that although it was customary for most of her employees to voluntarily contribute the suggested amount out of loyalty and a sense of office comaraderie, no employee was required to contribute to her fund. Randles also acknowledged that, at her behest, her employees performed clerical work for the Republican Executive Committee and attended political meetings. At trial, Randles insisted these activities were voluntary and not conducted on county time.

---

**1.** **42 U.S.C. Section 1983 (Supp. III 1979) provides:**

   **Civil action for deprivation of rights.**

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**2.** The first amendment, as applied to the states through the fourteenth amendment, provides in relevant part that government shall make no law "abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

   The fourteenth amendment provides in relevant part: "[N]or shall any State deprive any person of life, liberty or property, without due process of law;" U.S. Const. amend. XIV, § 1.

**3.** *See* Tenn.Code Ann. § 8–20–109 (1980).

Later during the campaign, between March and June of 1982, Randles learned that Reba Burnette and the family of Ruth Burkhart would not support Randles' bid for reelection. In March 1982, a third party informed Randles about the Burkharts' efforts on behalf of her opposition. And in a meeting with Randles on June 7, two months before the general election, Burnette explained that due to what Burnette perceived as unfair treatment, she would withdraw her support from Randles' campaign. Burnette then confronted Randles with derogatory statements Randles had allegedly made about the plaintiffs to other employees in the Criminal Court Clerk's Office. When Randles asked Burnette how she had obtained accounts of Randles' conversations in the Criminal Court office, Burnette replied, from tapes. Burnette did not disclose any further information about the tapes at that or any other point in time, but explained at trial that she lied about hearing tapes to protect the real source of her information, an employee who heard Randles' comments.

At trial, Randles testified that a few days before the confrontation with Burnette, she had received an anonymous telephone message that her office was electronically bugged. Randles prevailed upon the Federal Bureau of Investigation to determine whether her office was in fact electronically bugged. After the FBI failed to find listening devices, Randles hired her own investigators who allegedly found a bug in her desk on June 16, 1982.

In the last weeks of the campaign, shortly after the confrontation with Burnette and the bugging episode, Randles began closely observing the plaintiffs, allegedly for the purpose of investigating complaints Randles had previously received from other employees about the plaintiffs' behavior in the office. Burnette testified that during these last weeks before the election she was demoted, removed from her office and followed by other employees. Also during this period, both of the plaintiffs became aware of Randles' decision to fire them after the election. Burkhart testified that on August 6, 1982, the day following the election, Randles served her a separation notice and explaned that Burkhart's family had "done too much against her" in the election for Randles to continue Burkhart's employment. Both of the plaintiffs were terminated from their jobs that day.

Following the terminations, local newspapers printed a series of articles containing Randles' views of the dismissals. In the articles, Randles explained that she had fired the plaintiffs because they had made harassing telephone calls and had said terrible things about her. Randles further stated that the plaintiffs had performed their work unsatisfactorily; had failed to get along with other employees, and had been insubordinate. Randles also intimated that the dismissals were in part due to the plaintiffs' refusal to disclose further information about the bugging of her office. The plaintiffs maintained that Randles' charges were false, and eleven months later in July 1983,[4] they requested a name clearing hearing in a letter sent to counsel for the defendants.

On August 4, 1983, the plaintiffs filed this Section 1983 suit against the defendants. Plaintiffs alleged in the complaint that: (1) the defendant Randles had dismissed them for allegedly supporting her opposition in the 1982 election for the Office of Clerk of Courts and had compelled them to contribute half a months' salary to her campaign pursuant to county policy, in violation of the first and fourteenth amendments; and (2) that Randles had issued derogatory public statements about the plaintiffs in connection with their dismissals and had effectively denied a request by the plaintiffs for a name clearing hearing in violation of the fourteenth amendment right to due process. Joint Appendix 4–5.

---

**4.** At trial, Reba Burnette testified that during these eleven months she assumed her attorney had requested a name clearing hearing, but learned from subsequent counsel that due to a nervous breakdown, he had failed to do so. Joint Appendix 80–81.

The plaintiffs requested compensatory damages, punitive damages and reinstatement to their positions with back pay and benefits. Joint Appendix 8–9. The plaintiffs also sought declaratory and injunctive relief to enjoin the defendants from requiring employees to support and make contributions toward specific political candidates as a condition to retaining employment with the Office of the Clerk for the Criminal and Fourth Circuit Courts. *Id.*

The defendants responded by claiming essentially that the plaintiffs were properly dismissed for incompetent performance and for refusing to disclose the source of information they had earlier intimated to Randles came from an electronic bug in Randles' office. Joint Appendix 13–14. In addition, the defendants denied that the plaintiffs had requested a name clearing hearing and that, pursuant to county policy, Randles and Knox County required political patronage from employees as a condition to retaining employment. *Id.* Trial was held before a jury on December 5, 1983. Prior to the close of trial, the district court ruled that Knox County could not be found liable under Section 1983. The court dismissed the suit against the county, leaving Helen Randles the sole defendant in the case. Joint Appendix 322. The jury returned a general verdict in favor of the defendant and the district court ordered the case dismissed.

## II.

On appeal the plaintiffs assign seven errors which they contend require reversal by this Court. Three of the plaintiffs' arguments concern alleged abuses of discretion on the part of the district court, to wit: failure to conduct an adequate voir dire; failure to submit the plaintiffs' revised special interrogatories to the jury and failure to permit the plaintiffs adequate leeway in presenting proof on the alleged bugging incident. We do not address these arguments in detail but conclude from our review of the record that the district court did not abuse its discretion in ruling on these matters. We will, however, address at length the plaintiffs' other contentions that the trial court erred in (1) failing to adequately instruct the jury on the due process claim; (2) refusing to instruct the jury on punitive damages; and (3) dismissing Knox County as a defendant.

### A. Fourteenth Amendment Due Process and the Denial of a Name-Clearing Hearing

■ Plaintiffs first contend the trial court erred in refusing to instruct the jury on their fourteenth amendment due process claim. We agree with the plaintiffs that, since taken as a whole, the instructions to the jury on this claim failed to adequately present the issues of the case or the applicable law, the district court committed reversible error. *See Haislah v. Walton,* 676 F.2d 208, 212 (6th Cir.1982); *Laugesen v. Anaconda,* 510 F.2d 307, 315 (6th Cir.1975).

■ The record below demonstrates that the plaintiffs presented evidence which, if believed by the jury, would establish a fourteenth amendment claim. Specifically, the plaintiffs contend that a few months prior to the August 1982 election, Randles became aware that Reba Burnette and the family of Ruth Burkhart did not intend to support her bid for reelection. The defendant, plaintiffs alleged, had already compelled them to make the customary office contribution of half a month's salary to her campaign, but upon discovering they would not support her reelection bid, the defendant retaliated. The plaintiffs testified that Randles began a campaign of intimidation and harrassment against Burnette which included demotion, physical removal from her office, assignments of meaningless work and surveillance by other employees. The plaintiffs also presented testimony from other employees who felt obligated to contribute funds to Randles' campaign and who denied hearing the plaintiffs make derogatory remarks about Randles or seeing them abuse office privileges. Shortly after the plaintiffs were fired, local newspapers printed articles containing interviews in which Randles attributed the dismissals to the plaintiffs' insubordinate and malicious behavior toward her, their involvement in

an alleged scheme to bug her office and their general incompetence. The plaintiffs maintained that the charges were false and had caused substantial damage to their reputations which precluded finding other employment. In support of this allegation, the plaintiffs presented two prospective employers who testified that as a direct result of the articles, the plaintiff Reba Burnette was not hired. At trial, the plaintiffs also submitted a July 1983 letter allegedly sent to counsel for the defendants in which they requested a name clearing hearing. The plaintiffs contended that they received no response to this request.[5]

The pleadings and evidence submitted by the defendants disputed, but did not clearly refute the plaintiffs' case as described above. Testimony for the defense established that although the office set guidelines for employee contributions to Randles' campaign, no policy mandated contributions or attendance at political meetings, and no employee suffered adverse consequences for not contributing. Randles testified that in fact, she still retained employees who had supported her political rival, the former court clerk for Knox County. Randles also testified that prior to learning from Reba Burnette about a possible bugging of her office, she had ignored many complaints about the plaintiffs' office behavior from other workers. The defendants called several former and current employees who testified that the plaintiffs created tension in the office by constantly whispering to each other and excessively using the telephone for personal business. Randles did not deny the contents of the new articles, but testified that she fired the plaintiffs primarily because of their refusal to disclose what they knew about the bugging of her office and because of their misbehavior in the office.

At the close of trial, plaintiffs submitted three requested jury instructions concerning the fourteenth amendment due process claim. In essence, the requested instructions explained under what circumstances the plaintiffs would be entitled to a name clearing hearing.[6] The court rejected all of

---

5. The defendants suggest, without citation to authority, that since the plaintiffs failed to make a timely request for a name clearing hearing, their fourteenth amendment due process claim is time barred under Section 1983. Appellee's Brief at 3. We note, however, that at trial the defendants did not challenge the submission of Exhibit 4, the letter containing the plaintiffs' request for a hearing, on this ground. In fact, the defendants stipulated to the letter, Joint Appendix at 23–24, and at no point objected to the timing of the request. Moreover, the critical date for this Court to consider when addressing a statute of limitations issue in an employment termination case is the date of termination. *Kessler v. Board of Regents*, 738 F.2d 751, 754 (6th Cir.1984). The dates by which the parties comply with other procedures are irrelevant to the importance of the date of termination. *Id.* We find that Tennessee Code Annotated Section 28–3–104, the statute setting the limitation period for personal injury actions, provides the state statute of limitations to apply in this case. *Wilson v. Garcia*, —— U.S. ——, ——, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985); *Wright v. Tennessee*, 628 F.2d 949, 951 (6th Cir.1980). As the plaintiffs filed this action within the one year period provided for filing civil rights actions under Section 28–3–104 and requested a name clearing hearing prior to bringing the suit, we find no merit in the defendants' argument that the plaintiffs' fourteenth amendment claim is time barred.

6. The proposed jury instructions read in part as follows:

**PLAINTIFFS' REQUESTED JURY INSTRUCTION NUMBER 11**

The plaintiffs were entitled to a hearing only if you find from all of the evidence before you, first, that in the course of their discharge, certain charges were made against the plaintiffs by the defendant Randles.

Secondly, those charges were of such a nature that they created a false and defamatory impression about the plaintiffs and thus stigmatized them.

Thirdly, that the defendant Randles voluntarily published, or caused to be published, the charges made against the plaintiffs.

And, fourthly, the plaintiffs were in fact denied a hearing.

In all four of these circumstances existed, then the plaintiffs were entitled to a hearing; otherwise, no hearing was required. (citation omitted).

**PLAINTIFFS' REQUESTED JURY INSTRUCTION NUMBER 12**

[The plaintiffs] were entitled to a hearing in which to clear their names only if you find that their good names, reputations, honor or integrity were stigmatized by charges voluntarily made public by the defendant Randles in connection with the discharge or if you find that charges voluntarily made public by the defendant Randles in connection with the

the plaintiffs' requested instructions. Instead, the court summarized the parties' arguments for the jury, mentioned that the plaintiffs claimed to have requested but were denied a name clearing hearing, and read to the jury the portion of the fourteenth amendment giving rise to the plaintiffs' claims. Joint Appendix 352, 359. However, the court declined to explain the nature of the liberty interest at stake, under what circumstances the due process clause of the fourteenth amendment requires an opportunity to clear one's name, or under which of the facts in this case the jury could find a violation of the plaintiffs' civil rights. Counsel for the plaintiffs objected to the omission of an instruction on the failure to hold a name clearing hearing, to which the court replied, "Well, I don't think you had any right for a hearing, and I deny that right. You have had all the hearings that you deserve." Joint Appendix at 340.

■ We conclude this ruling constitutes reversible error. It is well established that a person's reputation and good name are among the liberty interests protected by the due process clause of the fourteenth amendment from damage by public government action in connection with a termination of employment or refusal to rehire. *Paul v. Davis,* 424 U.S. 693, 707–08, 96 S.Ct. 1155, 1163–64, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33

L.Ed.2d 548 (1972); *Lee v. Western Reserve Psychiatric Hab. Center,* 747 F.2d 1062, 1069 (6th Cir.1984); *Kendall v. Board of Ed. of Memphis City,* 627 F.2d 1, 5 (6th Cir.1980).[7] Accordingly, the Supreme Court has determined that where a nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name. *Codd v. Velger,* 429 U.S. 624, 627–28, 97 S.Ct. 882, 883–84, 51 L.Ed.2d 92 (1977) (per curiam); *Kendall,* 627 F.2d at 5. In light of the elements established by the parties' proof on the fourteenth amendment due process claim, the trial court was required to instruct the jury on the applicability of the principles embodied in these cases to the issues at bar. Accordingly, we reverse and remand for retrial in accordance with this holding.

### B. Punitive Damages

■ In a second challenge to the instructions received by the jury, the plaintiffs next contend the trial court erred in refusing to instruct the jury on the applicability of punitive damages to this case. The court instructed the jury: "[Y]ou cannot allow any punitive damages. This is not a case of punitive damages. The defendant did nothing to cause her to be subject to

---

discharge, imposed a stigma on the plaintiffs that foreclosed their freedom to take advantage of other employment opportunities.
**PLAINTIFFS' REQUESTED JURY INSTRUCTION NUMBER 14**
The burden of proof is on the plaintiffs to have proved by the greater weight of the evidence that any damages they sustained were the proximate result of either,
ONE, their denial by the defendants of a hearing to clear their names before their termination;

**OR**

TWO, that a substantial factor in their termination was political conduct protected by the First Amendment.
Plaintiffs need only prove one violation of their civil rights in order to recover from the defendants, and need not prove all violations alleged.

*See* Original Record on Appeal, Supplemental Volume 1 at 31, 32, 34. In our view, the plaintiffs' proposed instructions, read as a whole, correctly state the law as it would apply to the facts of this case. On retrial, the district court is of course free to fashion its own instructions which embody the relevant principles of law applicable to the facts presented. *Haislah v. Walton,* 676 F.2d 208, 212 (6th Cir.1982).

7. The plaintiffs also contend the defendants violated a second liberty interest by foreclosing other employment opportunities as a result of the allegedly defamatory statements in the news articles. Since Reba Burnette presented proof that she sought new employment and that two of her prospective employers denied her employment primarily because of the articles, we hold an instruction to the jury was required for this issue also. *See Kendall,* 627 F.2d at 5.

punitive damages." Joint Appendix 361. Because this instruction did not properly present the issue of whether punitive damages are recoverable in this action, we reverse the district court judgment.

The Supreme Court has held that a jury determining a Section 1983 action should receive instructions on whether and how to assess punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 52, 56, 103 S.Ct. 1625, 1638, 1640, 75 L.Ed.2d 632 (1983). Further, the Court has noted that evidence of sufficiently serious misconduct "that calls for deterrence and punishment ... above that provided by compensatory awards" triggers the jury's dircretion to consider awarding punitive damages. *Id.* at 54, 103 S.Ct. at 1639.

Based on our review of the record, we find the plaintiffs presented sufficient evidence of conduct by the defendant Randles which, if believed by the jury, would support a finding of callous indifference to the plaintiffs' first and fourteenth amendment rights.[8] We therefore conclude the jury should have received instruction on whether and how to assess punitive damages. *See Gill v. Manuel,* 488 F.2d 799, 801 (9th Cir.1973). The judgment of the district court to preclude jury consideration of the punitive damages is hereby reversed.

### C. Directed Verdict for the County

■ The plaintiffs finally contend the trial court erred in dismissing their claim against the defendant Knox County. At the end of trial, the court granted the defendants' motion for a directed verdict on all claims against Knox County on the ground that under Section 1983 the county could not be held liable on the theory of respondeat superior. Joint Appendix 346. While this is a correct statement of the law, *see Monell v. New York City Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), we find that it is irrelevant because the record establishes that the plaintiffs' claim against Knox County was premised on direct rather than vicarious liability.

The undisputed evidence at trial established that the defendant Helen Randles represented the county as the highest ranking official in the Office of the Clerk, Joint Appendix 100–01; that in this position, she was solely responsible for executing the policies and operation of the office, *id;* and that it was office custom for employees to contribute portions of their salaries to her political campaign. *Id.* at 122. Moreover, as part of its ruling on the defendants' motion for a directed verdict, the district court stated that the custom of collecting political contributions from county employees had been practiced, in essence, from time "immemorial." Joint Appendix 347.

In our view, this evidence establishes de facto policy which the plaintiffs allege is responsible for a deprivation of their first amendment rights. As the Supreme Court stated in *Monell,* a local government is liable under Section 1983 when execution of its official policy or custom is responsible for a deprivation of constitutional rights. *Monell,* 436 U.S. at 690, 694, 98 S.Ct. at 2037 (1978); *Pembaur v. City of Cincinnati,* 746 F.2d 337, 340 (6th Cir.1984). The Supreme Court did not condition this liability on the source of the policy, but in a point which is particularly relevant to this case, held that execution of a government's injurious policy "whether made by its lawmakers or *by those whose edicts or acts may fairly be said to represent official policy"* gives rise to the government's direct liability under Section 1983. *Monell* 436 U.S. at 694, 98 S.Ct. at 2037 (emphasis added); *Pembaur,* 746 F.2d at 340. Accordingly,

---

**8.** At trial and in their pleadings the plaintiffs asserted that prior to their termination, the defendant Randles intentionally harassed them and that she willfully issued false and derogatory statements to the public about the plaintiffs' characters and work performance, including statements that the plaintiffs had made harassing phone calls and spread "terrible" rumors about her. The defendant also implicated the plaintiffs in a scheme to bug her office. *See* Joint Appendix 140–41.

the judgment of the district court granting a directed verdict for the defendant Knox County is hereby reversed and remanded for retrial with the County reinstated as a defendant.

In conclusion, we find the trial court reversibly erred in (1) failing to adequately instruct the jury on the plaintiffs' due process claim; (2) refusing to instruct the jury on punitive damages; and (3) dismissing Knox County, Tennessee as a defendant. This case is remanded for retrial in accordance with the holdings set forth above.

Gilmore, District Judge, sitting by designation, dissented with opinion.