793 F.2d 1293
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MARTHA UNDERWOOD, Plaintiff-Appellant,
v.
CITY OF ROCHESTER; KENNETH JOHNSON, Defendants-Appellees.
 85-1371
 United States Court of Appeals, Sixth Circuit.
 5/14/86
 
 AFFIRMED
 E.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: KRUPANSKY and WELLFORD, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Martha Underwood appeals the district court's grant of summary judgment in favor of defendant-appellee Kenneth Johnson. Johnson, the City Manager of the City of Rochester, Michigan, discharged Underwood, his former secretary, on June 12, 1984, after she sent a personal note to a City Council member, which was critical of Johnson. She sent the note by placing it in a packet of information containing official City communications. On June 14, Underwood filed the instant lawsuit against the City and Johnson.
 
 
 2
 Count I of the complaint, brought pursuant to 42 U.S.C. Sec. 1983, alleged that Underwood's discharge deprived her of liberty without due process of law, and violated her first amendment rights. Count II alleged that Underwood's discharge violated the Michigan Whistleblower's Protection Act, MCLA Sec. 15.361 et seq. Count III alleged that defendants defamed Underwood by publishing a false reason for her discharge. For the reasons that follow, we affirm the district court's judgment for defendants.
 
 I.
 
 3
 Underwood was hired by Johnson in 1981 as his personal secretary. Underwood had a variety of responsibilities, including typing Johnson's correspondence, handling incoming telephone calls, typing City Council minutes, 'taking dictation from [the] City Manager; . . . opening and distributing the mail, taking outgoing mail to the post office at the end of the day; [and] serving as Recording Secretary for the Planning Commission and the Zoning Board of Appeals.' Another important duty was to prepare packets of information for each City Council member prior to each bimonthly council meeting. The council packets contain the agenda for the council meeting, a letter from the City Manager regarding the agenda items, documents relating to the agenda items, and other informational material. Johhson designated the items to be included in the packet, and Underwood was responsible for copying the documents, placing them in packets, and arranging for their distribution to the Mayor, the six other City Council members, the City Manager, the City Clerk, the City Attorney, and the Avon Township Library. All the council members were supposed to receive the same packets.
 
 
 4
 On June 8, 1984, Underwood prepared the council packets for the Monday, June 11, 1984, meeting. She placed a handwritten note concerning Johnson's proposals in the packet for council member Kenneth Bilodeau. The note stated:
 
 
 5
 Keh--
 
 
 6
 Read Items 12 and 13 carefully.
 
 
 7
 Should the manager be able to manipulate the Council into giving him whatever he wants?
 
 
 8
 Disability--$600 over the 5.2% [and] Retirement increase that goes into his ICMA retirement that's invested at 18% interest.
 
 
 9
 Automobile--go to Washtenaw County with City car when his wife is there? (City automobile used by Bldg. Insp. between mtgs. to [and] from home--I asked if I could have that privilege, the answer was 'no.')
 
 
 10
 Severance--termination pay--are you going to let him do this with taxpayer money?
 
 
 11
 Lastly--Item 13--Increase--should one employee receive a 9.6% increase?
 
 
 12
 Underwood placed the note only in Bilodeau's council packet.
 
 
 13
 Bilodeau opened his council packet on Sunday evening, June 10, 1984, and read Underwood's note. Bilodeau was 'agitated' and 'mad at Ms. Underwood.' He called Johnson on the telephone late Sunday evening and told him about the note. The next morning, Johnson went to Bilodeau's office and picked up a copy of the note. Johnson met with City Attorney Arthur Cox on Monday, June 11, 1984, to discuss disciplinary action against Underwood. Cox advised Johnson that Underwood's actions warranted her discharge. Johnson also consulted City Assessor/Treasurer Robert Smalley, who had previously served as the manager of other cities and as Acting City Manager of Rochester. Smalley felt that it was appropriate for Johnson to discharge Underwood.
 
 
 14
 After his discussions with Cox and Smalley, Johnson decided to discharge Underwood. Johnson felt that the action was necessary because '. . . the manner in which the note was conveyed and the content of that note destroyed any possibility of confidentiality between a supervisor and a confidential secretary.'
 
 
 15
 At the City Council meeting on Monday evening, June 11, 1984, Bilodeau informed the other Council members that he had received a note from a City employee, but he did not read the note into the record during the meeting. The minutes provide in part:
 
 
 16
 Councilman Bilodeau stated he would like to indicate to members of the Council he received a personal note in his packet which he doesn't believe other members of the Council received. The note is from a staff person which dealt with matters regarding salaries and benefits package. He did not think this was appropriate correspondence to be contained in only one of the council packets [sic] therefore he has made the note available to Mr. Johnson.
 
 
 17
 Following Bilodeau's statement, the City Council considered the various compensation proposals. The Council unanimously approved the benefit resolution.
 
 
 18
 On June 12, Johnson met with and discharged Underwood. The discharge letter stated: 'This separation is the result of your breach of loyalty to the undersigned by your actions on Friday, June 8, 1984.'
 
 
 19
 Immediately after her discharge, Underwood left the Rochester City Hall and went to see Council member Sue Douglas at her office at the Rochester Clarion newspaper. Wayne Genereux, another employee of the Clarion, was present during their conversation. Underwood showed Douglas her termination letter and told her about her discharge. Douglas said she 'wasn't surprised' that Underwood had been discharged. Underwood next went to the Rochester Eccentric, another local newspaper, and spoke to Bob Sklar, a reporter who covers Rochester City Hall, whom plaintiff knew 'just slightly.' Underwood testified that she told Sklar that she had been discharged, showed him her termination letter, and then asked him not to run a story about it.
 
 II.
 
 20
 In Pickering v. Board of Education, 391 U.S. 563 (1968), the Supreme Court held that a public employee does not relinquish his first amendment right to comment on topics of public interest because he is a government employee. The Court approached the issue by balancing "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. at 568, as quoted in, Connick v. Myers, 461 U.S. 138, 140 (1983) (brackets added in Connick).
 
 
 21
 In Connick, the Court scrutinized the reasons for the discharge of a government employee for speech she claimed related to a matter of public concern. 461 U.S. at 146 ('When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community government, officials should enjoy wide latitude in managing their offices . . ..'). The majority found that most of the speech in question did not involve a matter of public concern. The speech was a questionnaire prepared by an assistant district attorney in which she solicited the views of fellow staff members. The questionnaire requested views pertaining to office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors and whether employees felt pressured to work in political campaigns. Id. at 141. The plaintiff had prepared the questionnaire in response to her objections to her own transfer and her dispute with her supervisors. The Court stressed the questionnaire did not relate to the proper execution of the office's governmental duty to investigate and prosecute criminal cases. Neither did it relate to wrongdoing or breach of public trust. The majority acknowledged that discipline and morale in the workplace affect an agency's performance, but specifically found plaintiff's questions were a mere attempt 'to gather ammunition' in her dispute with her superiors. Id. at 148.[1]
 
 
 22
 Plaintiff argues that her note to the council member touched upon matters of public concern. In Connick the Supreme Court stated that to determine whether speech addresses a matter of public concern a court should examine its content, form and context as revealed by the entire record. 461 U.S. at 147-48.[2] Plaintiff asserts her statement is a matter of public concern because it addressed the expenditure of taxpayer's money and because it addressed the proper balance between the City Manager's office and the City Council. She further adds that her case is distinguishable from Connick because she was attempting to expose the City Manager's breach of trust through his misuse of political power and taxes.
 
 
 23
 We conclude that Underwood's note does not touch upon matters of public concern. Plaintiff's note primarily and principally relates to her objections to her supervisor's remuneration. She complains of a 9.6% pay increase, disability benefits of $600 over a 5.2% allowance, the existence of termination pay, and the City Manager's use of a City car to go to a county 'when his wife is there.' Plaintiff, however, does not demonstrate that the City Manager's facially reasonable remuneration requests adversely affected the public interest. We must examine the plausibility of her assertion that her note touched upon matters of public concern. We note Underwood complains that she was not given a City car for her use and also that she was displeased with the City Manager's refusal to give her larger pay increases. It appears clear that plaintiff's principal purpose in writing her note was to express her dissatisfaction with defendant's refusal to give her the increased benefits she had requested for herself a few days earlier. The plaintiff's note involved primarily a private gripe, not the public interest. It has a distinct 'internal aura.'[3]
 
 III.
 
 24
 We find no merit in plaintiff's due process claim. She argues that the stigma from her discharge on the ground she was a disloyal employee has deprived her of a liberty interest without due process. She claims her discharge has damaged her reputation in the community and her ability to get another job as secretary. We find no error, however, in the district court's ruling that since plaintiff's conduct was disloyal, no false information pertaining to plaintiff was published. Truth precludes a due process claim in this context. See Burkhart v. Randles, 764 F.2d 1196, 1201 (6th Cir. 1985).
 
 
 25
 Since our holding disposes of plaintiff's due process claim, we need not address the legal significance of who caused the publication of the circumstances of plaintiff's discharge. The truth of the disloyalty charge also disposes of plaintiff's defamation claim.
 
 IV.
 
 26
 We also agree with the lower court that plaintiff has no claim under the Michigan Whistleblower's Protection Act. Plaintiff argues that the district court was incorrect to require she allege some specific illegal conduct in order to have a cause of action under the Whistleblower Act. But the Act does require 'a violation or a suspected violation of a law or regulation or rule.' MCLA Sec. 15.362. Plaintiff only alleges the City Manager's 'manipulation' of the City Council. Plaintiff has not shown that the City Manager's conduct was even partially illegal.[4] Mere alleged 'manipulation' does not suffice to support this claim.
 
 
 27
 Accordingly, we AFFIRM the district court's judgment for defendants in all respects.
 
 
 
 [1]
 The Court, however, found that one question on the questionnaire was a matter of public concern. The question relating to whether employees feel pressured to work in political campaigns required a determination whether the defendant justifiably had discharged plaintiff. Id. at 149. The Court stated the determination requires balancing the nature of the employee's expression with the government's interest in the effective and efficient fulfillment of its duties
 
 
 [2]
 The Court added that '[t]he inquiry into the protected status of speech is one of law, not fact.' 461 U.S. at 148 n.7
 
 
 [3]
 Since we find that Underwood's note does not touch upon a matter of public concern, we need not scrutinize the reasons for her discharge
 
 
 [4]
 She does cite the Open Meetings Act. MCLA Sec. 15.263(2). But the district court ruled this law does not preclude the City Manager from privately lobbying City Council members. Plaintiff does not respond to the district court's ruling in this regard