Because I disagree with the majority's holding in regard to the statute of limitations, I respectfully dissent.
According to the majority, the limitations period did not begin to run in May 1993 because there is evidence indicating that appellant informed those not originally selected (including claimants) that future transfers might be forthcoming and that, in fact, other transfer offers were made after the original May 1993 offers.[1] Implicit in the majority's opinion are two possible conclusions: (1) that the alleged discriminatory acts against claimants lasted throughout the plant shut-down period,i.e., that the claims were timely because the period of discrimination ended only when the last transfer was offered, albeit not to the claimants; or (2) that the commencement of the running of the limitations period was tolled until well after the May 1993 selection process. I find that neither conclusion can be supported by the law or facts.
As to the first conclusion, the majority fails to recognize that the factual basis underlying claimants' age discrimination claims is limited to the original May 1993 transfer selections, and not any subsequent transfer decision. In fact, absent the comments of John Ireland (evidence that appellees appear to concede is alone insufficient to support a finding of age discrimination by appellant), the hearing officer's finding of discrimination is based solely on evidence related to the activities at the May 8, 1993 selection meeting — in particular, that those selected for transfer offers in that meeting were all (or nearly all) younger than the claimants and that many of those selected for transfers in that meeting were less qualified than the claimants. The trial hearing officer made no specific findings of fact demonstrating age discrimination in any subsequent transfer decision. In sum, the claimants' age discrimination claims relate only to a discrete incident occurring more than six months before the complainants filed their charges with the commission.
Likewise, the majority's second implicit conclusion (i.e., that the running of the limitations period was tolled) is similarly unfounded. Citing Zebedeo v. Martin E. Segal Co., Inc.
(1984), 582 F. Supp. 1394, the majority notes that the statute of limitations does not begin to run if the adverse employment decision is equivocal in nature. The majority then indicates that the transfer decisions at issue here were equivocal (and hence the statute of limitations did not begin to run) because it was uncertain whether the claimants would eventually be offered transfers. While I do not disagree with the general proposition that the statute of limitations does not begin to run until the alleged discriminatory employment action becomes unequivocal, I find that the rule is inapplicable here.
First, the facts here are clearly distinguishable from those in Zebedeo. In Zebedeo, the court found that the original, verbal communication to plaintiff of the employer's intent to terminate him was clouded by later, specific intimations toplaintiff that he might be transferred rather than fired. Id. at 1411. Thus, the court concluded that the statute of limitations did not begin to run until plaintiff received an explicit letter of termination. Id. ("Under similar equivocal circumstances, courts have required an explicit letter of termination as the triggering agent for commencement of the period of limitations.") Here, by May 14, 1993, all of the claimants had received an explicit letter of termination, and none of the claimants produced evidence that they had been personally singled out as a potential transfer offeree. Rather, the possibility of future transfer offers was made known to the Columbus supervisory employees in general.
Moreover, unlike in Zebedeo, the discriminatory employment decision in this case was not later made equivocal by the employer's subsequent actions. In Zebedeo, the alleged discriminatory employment decision was the employer's decision to terminate plaintiff. Thus, later comments by the employer contradicting the earlier decision, i.e., that plaintiff would not be terminated, made the original decision equivocal. Here, however, the discriminatory acts, as found by the hearing officer and as discussed above, were the decisions at the May 8, 1993 selection meeting to make initial transfer offers to the eleven production supervisors and not to the claimants. Nothing that appellant subsequently did or said conflicted with these original decisions. Transfers were offered (and as found by the hearing officer, unlawfully so) to eleven other supervisors. There was no evidence that appellant ever considered revoking or changing its decision to offer transfers to the eleven originally selected. In fact, even if the claimants eventually had been offered transfers, the discriminatory acts found by the hearing officers would still have occurred. In sum, there was nothing equivocal about the employment decisions found to have been discriminatory in this case.
Finally, case law clearly indicates that the mere possibility that future offers of employment may be forthcoming does not render an otherwise unequivocal employment decision equivocal and does not toll the running of the statute of limitations as to the originally discriminatory employment action. For example, the majority cites the United States Supreme Court opinion in Delaware State College v. Ricks (1980), 449 U.S. 250,101 S.Ct. 498, for the general proposition that the statute of limitations accrues at the time of the discriminatory act. Significantly, however, the majority fails to note that the United States Supreme Court found that the plaintiff's discrimination claim accrued when he received notice that he would be terminated, even though the letter was equivocal in holding out the possibility that plaintiff might still receive tenure and thereby avoid termination. Id. at 259-262; 505-506.
Similarly, Janikowski v. Bendix Corp. (C.A.6, 1987),823 F.2d 945, a case extensively relied upon by appellant is particularly applicable here. In that case, brought under the Federal Age Discrimination in Employment Act, Janikowski's supervisor informed him by letter that his employment with Bendix would be terminated in nearly a year unless he was unable to obtain a position elsewhere in the company. Id. at 946. Janikowski, like appellees here, argued that his cause of action did not accrue when he received notice of his termination because it was not definite and final, given the possibility that he could continue working elsewhere in Bendix. Id. at 947. Noting that the same argument was rejected by the United States Supreme Court in Ricks, the Sixth Circuit held that statute of limitations was not tolled as to Janikowski's age claim. As stated by the Sixth Circuit, "employment decisions which are `somewhat ambiguous with respect to finality' still trigger the statute of limitations."Id. (Quoting Kessler v. Board of Regents (C.A.6, 1984),738 F.2d 751, 755).
I find no meaningful distinction between Ricks,Janikowski, and this case. As such, the statute of limitations on claimants' discrimination claims arising out of the May 1993 selection decisions began to run at that time. For the foregoing reasons, I would sustain appellant's first assignment of error.
[1] While the majority implies that numerous offers were made to Columbus production supervisors after June 7, 1993, the hearing officer specifically identified only one such offer, to Edwin Bickar, age 46, in September 1993. The hearing officers also found that claimant Groves interviewed for a supervisor position in November 1993, but the hearing officer did not indicate who, if anyone, was offered this position.