RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0307p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

RALPH E. KELLY,

        *Plaintiff-Appellant,*

    *v.*

ISHMON F. BURKS, JR. et al.,

        *Defendants-Appellees.*

No. 04-5692

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 03-00080—Joseph M. Hood, Chief District Judge.

Submitted: July 20, 2005

Decided and Filed: July 20, 2005

Before: CLAY, GILMAN, and COOK, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** William K. Moore, Versailles, Kentucky, for Appellant. Daniel Luke Morgan, COMMONWEALTH OF KENTUCKY JUSTICE AND PUBLIC SAFETY CABINET, Frankfort, Kentucky, Roger G. Wright, KENTUCKY STATE POLICE LEGAL OFFICE, Frankfort, Kentucky, for Appellees.

---

**OPINION**

---

    RONALD LEE GILMAN, Circuit Judge. Dr. Ralph E. Kelly, after being forced to resign as Commissioner of the Kentucky Juvenile Justice Cabinet, brought this suit pursuant to 42 U.S.C. § 1983, claiming that his due process rights were violated when the Kentucky Personnel Board denied him a hearing to clear his name. The district court dismissed Kelly's suit, finding that it was barred by the applicable statute of limitations. For the reasons set forth below, we **VACATE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

1

# I. BACKGROUND

## A.     Factual background

Kelly was hired as the Commissioner of the Kentucky Juvenile Justice Cabinet in 1996. In September of 2002, Kelly took an unrelated trip to New York City accompanied by two 21-year old men. During the course of the trip, one of the men called the local police on September 24, 2002 and told them that Kelly had reached into the man's underpants and groped him. Kelly was arrested later that day and charged with two misdemeanor counts of unwanted contact of a sexual nature.

He was detained by the New York City police until the next day, September 25, 2002. Kelly then returned to his hotel room to retrieve his luggage and briefly made a phone call to Juvenile Justice Cabinet Secretary Ishmon F. Burks Jr., one of the defendants in the present case. *Id.* Kelly told Burks what had happened, whereupon Burks demanded Kelly's resignation. After further discussion, however, Burks agreed to meet with Kelly at nine o'clock the next morning before making a final decision.

But as soon as he hung up the phone, Burks changed his mind again. He contacted the Justice Cabinet's General Counsel, Barbara Jones, and requested that she call Kelly's home and inform Kelly's wife that her husband had been dismissed. When Kelly arrived back in Kentucky, his wife informed him of his termination.

Early the next morning, on September 26, 2002, two police officers came to Kelly's door and presented him with a letter from Burks cancelling their nine o'clock meeting and informing Kelly that his termination was official. They then presented Kelly with a letter of resignation, which Kelly alleges that he signed under protest.

On October 22, 2002, Kelly filed a request for a hearing with the Kentucky Personnel Board, contending that "[t]he circumstances of my dismissal have greatly impacted my ability to find other work in the field of Juvenile Justice." He further requested "a hearing to restore to the extent possible, my good name and reputation." The Personnel Board appointed a hearing officer to examine Kelly's complaint. Because "there was no alleged discriminatory reason or illegal cause for his dismissal," the hearing officer recommended that the Personnel Board dismiss Kelly's complaint without a hearing. The Personnel Board adopted the hearing officer's recommendation and dismissed Kelly's appeal on April 14, 2003.

While Kelly's appeal before the Kentucky Personnel Board was pending, he was also proceeding to trial in New York on the two sexual-assault charges. Kelly's first trial ended in a hung jury. The second trial concluded in November of 2003, with Kelly being acquitted on both charges.

## B.     Procedural background

Kelly filed the present § 1983 action on December 8, 2003, naming as defendants Burks, Justice and Public Safety Cabinet Secretary Stephen B. Pence, former Governor Paul E. Patton, and current Governor Ernie Fletcher. In his complaint, Kelly alleged that the defendants (1) "had deprived him of his liberty interest in his good name and reputation by first coercing his resignation and then by publically [sic] airing the reasons for it," and (2) had "denied him a name clearing hearing."

The defendants responded by filing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. They asserted that Kelley's action was barred by Ky. Rev. Stat. Ann. § 413.140(1)(a), Kentucky's one-year statute of limitations. Applying this one-year statute, the court dismissed Kelly's claims, determining that they had expired on September 25, 2003, one

year after Kelly's termination, and that "they are now time-barred as the complaint in the present matter was not filed until December 8, 2003." This timely appeal followed.

## II. ANALYSIS

### A.        Standard of review

Kelly's sole claim on appeal is that the district court erred in concluding that his claim was time-barred by the one-year statute of limitations. "The determination that a complaint was filed outside of the applicable statute of limitations is a conclusion of law that this court reviews de novo." *Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 938 (6th Cir. 1999).

### B.        The district court erred in concluding that Kelly's claim was time-barred by the one-year statute of limitations

As an initial matter, Kelly concedes that the appropriate statute of limitations in the present case allows only one year to file suit. *See* Ky. Rev. Stat. Ann. § 413.140(1)(a); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) (applying Kentucky's one-year statute of limitations to a § 1983 cause of action). His principal contention, however, is that the district court erred in determining that this one-year time frame began to run from the time of his termination rather than from the time when his appeal to the Kentucky Personnel Board was dismissed. In support of his position, Kelly argues that his challenge is not to the decision to terminate his employment, which occurred on September 25, 2002, but, rather, to the denial of his request for a name-clearing hearing, which did not occur until April 14, 2003.

This court has held that, in actions brought under § 1983, "[t]he statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984) (citations omitted). In the present case, therefore, the one-year statute of limitations began to run when Kelly had reason to know of the alleged constitutional injury.

Kelly was terminated on September 25, 2002, but his request for a name-clearing hearing was not denied until April 14, 2003. When he was terminated in September of 2002, no amount of due diligence would have alerted Kelly to the fact that his name-clearing hearing would eventually be dismissed. The ruling that the statute of limitations on Kelly's claim began to run on September 25, 2002 is therefore erroneous. Indeed, to require the filing of a federal complaint within one year of termination would unfairly give a public employer in Kentucky the power to prevent a former employee from litigating the denial of a hearing by not deciding the request until more than a year after the employee was terminated.

The defendants, however, argue that "claims concerning termination of employees all accrue from the date of such termination," thus making September 25, 2002 the appropriate date for statute-of-limitations purposes. But this argument overlooks the thrust of Kelly's contention, which is not that he was terminated wrongfully, but that the denial of the name-clearing hearing violated his constitutional rights. The district court's reliance on *Kessler v. Board of Regents*, 738 F.2d 751 (6th Cir. 1984), is therefore misplaced. In *Kessler*, this court held that "[w]hen allegations of discrimination involve a termination from employment, the critical date is the date of termination; the existence of a grievance procedure does not change the importance of this date." 738 F.2d at 754. The court, however, applied that principle solely as to the claim of discriminatory discharge. *Id.* at 755. As to the claim of denial of postdeprivation process, the court calculated the limitations period not from the time of termination, but from the time of the deprivation of process. *Id. Kessler*, therefore, actually supports Kelly's argument.

The other case cited by the district court, *Burkhart v. Randles*, 764 F.2d 1196 (6th Cir. 1985), is similarly distinguishable. In *Burkhart*, the court rejected the defendants' argument that a request for a name-clearing hearing was untimely because the defendants had not challenged the timeliness of the request at trial and also because the plaintiffs had in fact filed their complaint within one year of the date that they were terminated. *Id.* at 1200 n.5. Because the issue of timeliness was not properly before the court on appeal, its analysis was dicta and therefore not controlling in the present case. *See Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002) ("We are of course not bound by dicta.").

The defendants also contend that the Personnel Board dismissed Kelly's request for a hearing because "it has no authority for conducting such hearings." But the question of whether the Board had name-clearing authority is not before us. The only issue presently before us is when the alleged injury in question took place, not whether Kelly's request for a name-clearing hearing was meritorious. And although the district court should consider this argument more fully on remand, the applicable law suggests that the Personnel Board did have the authority to conduct a name-clearing hearing. *See* Ky. Rev. Stat. Ann. § 18A.075(3) (charging the Personnel Board with the duty to hear appeals from unclassified employees who have been dismissed, demoted, suspended, or otherwise penalized for cause).

The defendants likewise submit that, because of allegations of prior drug use by Kelly, a name-clearing hearing would have been pointless because "a name clearing hearing can only serve a purpose when one's name can, indeed, be cleared." Kelly was, however, acquitted on the charges upon which his termination was based. And his alleged drug use notwithstanding, a trier of fact might still find that Kelly's due process rights were violated when he was denied a name-clearing hearing. The defendants' argument on this point is therefore unpersuasive.

We conclude that the alleged constitutional injury occurred on the date that the name-clearing hearing was denied, which was on April 14, 2003. Only as of that date did Kelly "know[] or ha[ve] reason to know of the injury which is the basis of his action." *Sevier*, 742 F.2d at 273. This conclusion, however, is qualified by the fact that only the claims brought with regard to a name-clearing hearing were timely. Any claims that Kelly might have raised about the constitutionality of his actual termination are time-barred under the one-year statute of limitations, since that event took place on September 25, 2002. *See Kessler*, 738 F.2d at 754.

## III. CONCLUSION

For all of the reasons set forth above, we **VACATE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.