# Richmond.

## J. A. Cox, et als. *v.* City Council of Bristol, Virginia.

### March 18, 1926.

#### Absent, West and Campbell, JJ.

1. Municipal Corporations—*City Manager Form of Government—Special City Charter Providing for City Manager Form of Government—Repeal of Special Charter by Section 2932 of the Code of 1919 as Amended by Acts of 1922, Chapter 186, Section One—Case at Bar.*—The instant case was an application by citizens of the city of Bristol for a peremptory writ of mandamus to require the members of the city council to divide themselves into two groups as required by section 2932 of the Code of 1919, as amended by Acts of 1922, chapter 186, section one. To this petition the members of the city council filed their demurrer and answer, thereby raising the question whether the provisions of section 2932 as amended by Acts of 1922 had any applica tion to the city of Bristol or whether section seven of the city charter adopted in 1920 was controlling in Bristol. In other words, the question at issue was whether section 2932 as amended in 1922 repealed or modified section seven of the charter of Bristol. If the city of Bristol had not been granted an entirely new charter in 1920, there could be no doubt but that the amendment would apply.

   *Held:* That as the charter of 1920 was a reaffirmance of the general law touching the city manager plan of government and not an intention to depart from it, the Act of 1922, chapter 186, section one, was applicable to the city of Bristol and impliedly repealed section seven of the charter.

2. Municipal Corporations—*City Manager Form of Government—Acts of 1922, Chapter 186, Section One, Amending Section 2932 of the Code of 1919—Applicability to City Organized Under Special Charter—Case at Bar.*—The city of Bristol was organized under a charter of 1908. In 1919 it adopted the manager form of government, pursuant to chapter 119 of the Code, and the charter of 1908, except in so far as it was in conflict with this chapter, was in full force and effect. Owing to conflicts in the fundamental law of the city, its charter and the new form of government adopted, the legislature granted to Bristol in 1920 an entirely new charter strictly in conformity and in harmony

with all the provisions of chapter 119 of the Code.   It was not in-
tended thereby to place the city of Bristol in the category of such
cities as had adopted the city manager plan by charter in contradis-
tinction to a city which had changed its form of government pursuant
to chapter 119 of the Code.   The act of 1922, chapter 186, section
one, amending section 2932 of the Code of 1919, applies "in any city
that has already or may hereafter adopt such change in its form of
government, etc."

   *Held:*   That the city of Bristol came strictly within the provisions of
the amendment of 1922.

.3.   Appeal and Error—*Municipal Corporations—Mandamus to City Council
to Compel it to Comply with Acts of 1922, Chapter 186, Section One,
Amending Section 2932 of the Code of 1919—Moot Questions—Time for
Issuance of Writ Having Passed.*—The instant suit was a petition
for mandamus to compel a city council to comply with Acts of 1922,
chapter 186, section one, amending section 2932 of the Code of 1919,
and divide themselves into two groups.   The lower court refused to
issue the mandamus, and in the Supreme Court of Appeals issuance
of the writ of mandamus as prayed for could not be ordered as the
time designated in the prayer of the petition had passed.

   *Held:*   That, however that might be, the matter was of sufficient
importance to justify a construction of the statute, so that petition-
ers or others, if they desire to do so, may take such steps as they
are advised are necessary to preserve their rights in the premises,
and the decision of the lower court was reversed.

   Error to a judgment of the Corporation Court of the
city of Bristol, refusing to grant a writ of mandamus.

                                           *Reversed.*

   The opinion states the case.

   *John S. Ashworth,* for the appellants.

   *Donald T. Stant,* for the appellee.

   Chichester, J., delivered the opinion of the court.

   In the year 1919 the city of Bristol, pursuant to the
provisions of chapter 119 of the Code, 1919, changed
its form of government by adopting the "city manager"
plan.

[1] Section 2932 of the Code, included in this chapter (119) provided for the election of members of city councils and their terms of office. The provision was that all members of a city council (of such cities as changed their form of government as provided for) should be elected at the next regular election for mayor and councilmen, and that their term of office should begin on September first following the election and that they should serve for four years. Provision was then made, in case the regular election did not occur within two years after the special election adopting the manager form of government, that members of council should be elected at the next regular June election, whose term of office should commence on the first of September following, and that "they should serve for a term of two years, and thereafter the election was to be for a term of four years."

In 1920, the city of Bristol having been, since 1908, functioning under a charter of that date, was granted a new charter by which the charter of 1908 was repealed (Acts 1920, p. 432).

Section seven of the charter of 1920 provides: "The council shall consist of five members, who shall be elected on a general ticket from the city at large and shall serve for a term of four years from the first day of September next following the date of their election and until their successors shall have been elected and qualified."

Section eighteen of the charter provides: "A municipal election shall be held on the second Tuesday in June of every fourth year after the year nineteen hundred and nineteen, and shall be known as the regular municipal election for the election of councilmen. All other municipal elections that may be held shall be known as special municipal elections except the election mentioned in section twenty hereof."

In 1922 (Acts 1922, c. 186, sec. 1) the legislature amended section 2932 of the Code (part of chapter 119, providing for the city manager form of government), relating to the election and the term of office of councilmen.    By this amendment it was provided "that the successors of the two year councilmen, who shall be elected at the next regular election, and the successors of all councilmen now holding office under the provisions of this act in any city, as well as all councilmen elected at the first election hereafter held for councilmen hereunder, in any city that has already or may hereafter adopt such change in its form of government, shall by drawing lots be divided into two groups of equal numbers, or as nearly equal numbers as possible, one of which groups shall serve for two years and until their successors shall have been elected and qualified, and the other group shall serve for four years and until their successors shall have been elected and qualified, but the successors of all councilmen whose division into groups is herein provided for, as well as all other councilmen to be elected by any city adopting such change in its form of government, whose division into groups is not herein provided for, shall serve for a term of four years, and until their successors shall have been elected and shall have qualified, and all elections to be held under this act shall be held at the time and in the manner provided for by general law."

On the seventh day of April, 1925, Henri Doriot and others, citizens of the city of Bristol, presented their petition to the judge of the Corporation Court of the city of Bristol, and after setting out substantially the facts as above narrated, alleged that the present five members composing the city council were elected on the second Tuesday in June, 1923, and entered upon their terms of office September

1, 1923; that although under said section 2932, as amended in 1922, the terms of office of one group of said councilmen expires on August thirty-first of this year, and their successors should be elected on the second Tuesday in June of this year, said council has not yet complied with said section 2932 by drawing lots and dividing said council into two groups, so that it may be known just how many vacancies there will be required to be filled at the said June election of this year.

They prayed for a peremptory writ of mandamus to compel the members of the city council to divide themselves into two groups, as required by the statute as amended.

The members of the city council filed their demurrer and answer to the petition, the effect of both of which is to raise the issue as to whether the provisions of section 2932 of the Code, as amended by Acts 1922, has any application to the city of Bristol, or whether the provision (section seven) of the charter adopted in 1920, above quoted, is controlling in Bristol. In other words, the contention is as to whether section 2932, as amended in 1922, repeals or modifies section seven of the charter of Bristol.

This issue is stated in the demurrer as follows:

"(1) The general law relied upon in the petition does not apply to the city of Bristol, which, as the petition shows, has a charter passed in the year 1920, which provides a four year term of office for its councilmen.

"(2) Even if the general law applies to a city having such charter, its language is not broad or comprehensive enough to repeal by implication the aforesaid charter provisions, and such repeal is not expressly made."

The trial court refused to grant the writ of mandamus, and in so doing stated, in a written opinion filed as a part of the record in the case, that "the amended section only undertakes to divide into groups councilmen to be elected and to hold office under and by virtue of the provisions thereof. It has no application to the councilmen of any city with such new form of government acting under a special charter in this regard."

The question is a very close one. Of course, if the city of Bristol had not been granted an entirely new charter in 1920 there could be no doubt but that the amendment would apply. This is conceded. The difficulty arises because, subsequent to the change in the form of government in 1919, the old charter of 1908 was superseded by that of 1920. The contention is very clearly expressed in the foregoing quotation from the opinion of the learned trial judge.

The situation, as disclosed by the record, involves consideration of the following facts:

In 1918 the legislature enacted into law what is known as the "city manager" plan of government. This act afterwards became chapter 119 of the Code, 1919. There were certain provisions which applied to cities of more than 50,000 inhabitants, and there were other provisions applicable to cities of less than 50,000 inhabitants. The application of the statute, however, was optional, and was operative only in those cities which adopted it by a majority vote in a special election in which the question of the adoption of this form of government was submitted to the electorate.

The cities of Virginia consisted, at the time of the passage of the act, of those which were organized under general law, and those organized under special charters.

Cities in both classes availed themselves of the

opportunity and adopted the city manager plan of government as provided for by the act.

There were other cities, Norfolk for example, which adopted a manager form of government, but which did so, not under the provisions of chapter 119, but by enactment of a special charter by the legislature. In such cases the question of the change of government was never submitted to the people in an election. So there are two classes of cities today in Virginia which have adopted a changed form, or city manager plan, of government, one of which adopted the change under the general law, or the general provisions of chapter 119, and the other under special charter, providing for a city manager or changed form of government, but not conforming in all respects to the general law as contained in chapter 119.

The city of Bristol was, at the time of the enactment of chapter 119 of the Code, organized under a special charter, enacted in 1908. In 1919, in conformity with the provisions of chapter 119, at a special election held for the purpose, the city government was changed and the manager plan of government was adopted. It should be observed that the adoption of this plan of government did not repeal any charter of any city. It only repealed any sections of any such charter as were in conflict with the provisions of the chapter (see section 2934 of chapter 119, Code 1919). So that when a city adopted the city manager form of government under the provisions of chapter 119, it did not cease to be a city organized under a special charter, but it did put itself in a class which had adopted the city manager form of government by election under the general law, as distinguished from a city which had adopted a manager form of government by special charter.

Thus, by the election held in Bristol in 1919, this city put itself in the class of cities which had adopted this change in its form of government under the act.

[2] Of course, it was not only possible for the city, as heretofore stated, to have changed its form of government by special charter, but it was within the power of the legislature, even after Bristol, or any other city, had changed its form of government pursuant to chapter 119 of the Code, to grant it a special charter, adhering in its essentials to the city manager form of government, and yet containing provisions as to the manner of election and term of office of its councilmen, or otherwise, in conflict with the general provisions of chapter 119, and thus become, in effect, a city which had adopted a changed form of government by charter; but that was not the case here. The city of Bristol, as said, was organized under a charter of 1908. In 1919 it adopted the manager form of government, pursuant to chapter 119 of the Code, and the charter of 1908, except in so far as it was in conflict with this chapter, was in full force and effect. But there were many conflicts in the fundamental law of the city, its charter and the new form of government adopted, which naturally resulted in confusion, making the adoption of a new charter to conform to new conditions almost necessary. So that when the legislature granted to Bristol, in 1920, an entirely new charter, strictly in conformity, and in harmony with all the provisions of chapter 119, it was not intended thereby, either by the legislature or by the city of Bristol, to place the city in the category of such cities as had adopted a city manager plan by charter, in contradistinction to a city which had changed its form of government pursuant to chapter 119 of the Code. Of course, it was, as heretofore stated, possible for Bristol, hav-

ing adopted the city manager plan, to have changed by charter some of the provisions of the general law, thus indicating that while it intended to adhere to the more modern form of government, it further intended to develop it along lines of its own choosing; but having adopted a charter in 1920 to supplant the charter of 1908, as was practically necessary to harmonize the law, after having changed its form of government pursuant to chapter 119, which charter was in entire conformity with the Code provisions, indicates that the intention was to follow the evolution of the general law, as from time to time changes expressive of this progressive spirit were written into the general law by the legislature.

The change in the law, involved in the amendment of 1922, was such a step of progressivism, and its plain object was to prevent the election of an entirely new council, unused to the conduct of municipal affairs, at one time. There was no change ultimately in the term of office. The only real change was in the time of election. By the new method, there was necessarily at all times in every city council about half of the councilmen who had had experience in the conduct of municipal affairs.

All this is strongly persuasive in the construction of the charter of 1920 and the amended section, 2932, as they relate to each other.

If we bear this in mind and examine the language of the amendment, we think the conclusion is well nigh irresistible that the charter of the city of Bristol, of 1920, which we construe as a reaffirmance of the general law touching the city manager plan of government and not an intention to depart from it, was amended along with the general law by the amendment of section 2932. Viewing the situation in this light,

it will be observed that the city of Bristol falls within the exact language of the amendment.

The amendment states that "the successors of all councilmen now holding office under the provisions of this act in any city, as well as all councilmen elected at the first election hereafter held for councilmen hereunder *in any city* that has *already* or may hereafter adopt such change in its form of government," etc.

The city of Bristol comes strictly within the provisions of the amendment. The councilmen, in office at the time of the filing of the petition, were councilmen holding office under the provisions of the act and the city was one which had already adopted the change in its form of government *under the act.* It did not make any change in its form of government by its charter of 1920. That charter neither made any change in its form of government nor did it contain any provisions in conflict with the general law by virtue of which the change in the form of the government of the city of Bristol was brought about. So that when the general law, under which the change in the form of the city government, was made, and which had not been subsequently altered by charter, expressly declared that the amendment should apply to all cities which have *already* adopted such change in their form of government, under and by virtue of the law (chapter 119), and when it appears that Bristol changed its form of government by virtue of this law and had not changed it by charter in any way, when the amendment was enacted, there seems no escape from the conclusion that the city of Bristol is affected by the amendment. To repeat, the amendment applied to all cities which had changed their form of government under chapter 119 of the Code, and Bristol had

made no change in its form of government except under chapter 119 of the Code. The charter of 1920 made no change whatever.

The distinction to be observed, as will readily appear from the language of the amended statute (2932), is not as between cities *organized* under special charter or general law, but it is between cities which made a *change* in their *form* of government by virtue of chapter 119 on the one hand, and cities which made a change in their form of government by special charter or which have made no change at all on the other. The statute (2932), as amended, applied to the class of cities first mentioned, and we think Bristol is one of those cities.

The city of Bristol answered to the description of a city whose councilmen or their successors held office under the provisions of the act, and which had adopted the only change which had been made in its form of government, under the act, and to all such cities the amendment applies in exact terms.

[3] Issuance of the writ of mandamus as prayed for cannot be now ordered as the time designated in the prayer of the petition has passed.

However this may be, the matter is of sufficient importance to justify a construction of the statute, so that petitioners or others, if they desire to do so, may take such steps as they are advised are necessary to preserve their rights in the premises.

*Reversed.*