BRISTOL VIRGINIA SCHOOL BOARD, ET AL.

V.

ROYCE W. QUARLES

Record No. 841780

BRISTOL VIRGINIA SCHOOL BOARD

V.

ROYCE W. QUARLES

Record No. 850569

March 4, 1988

Present: All the Justices

G. *Walter Bressler; George M. Warren, Jr. (Peter Curcio; Robert Dickert; Bressler & Curcio; Warren & Warren*, on briefs), for appellant. (Record Nos. 841780 and 850569)

*Faith Dillow Esposito (Ralph M. Dillow, Jr.*, on brief), for appellee. (Record Nos. 841780 and 850569)

STEPHENSON, J., delivered the opinion of the Court.

These two appeals present questions concerning a school board's removal of a division superintendent. In the first appeal (Record No. 841780), the dispositive question is whether the trial court erred in ruling that the superintendent was deprived of a liberty interest without procedural due process. In the second appeal (Record No. 850569), we determine whether the trial court erred in ruling that the school board did not have "sufficient cause" to remove the superintendent.

# I

## *THE FIRST APPEAL* (Record No. 841780)

At a meeting held December 12, 1983, the Bristol Virginia School Board (the School Board)[1] removed Royce W. Quarles as Superintendent of Schools for the City of Bristol. Quarles appealed the School Board's decision to the Circuit Court of the City of Bristol as provided by Code § 22.1-65.[2] In his petition for appeal, Quarles alleged that he had been employed as superintendent of schools for the city since July 1, 1973, and that the "School Board and the members thereof individually, wrongfully, summarily and without sufficient cause, arbitrarily and capriciously dismissed [him]." In answer to Quarles' petition, the School Board and its individual members admitted the period of Quarles' employment as Superintendent of Schools, but denied all other allegations in his petition.

After the School Board had filed answers to interrogatories, Rule 4:8, and responses to requests for admissions, Rule 4:11, Quarles, pursuant to Rule 3:18, moved for summary judgment and "for his reinstatement as Superintendent." The motion requested that the court declare his removal from office "void and without effect, the same being in violation of the Fourteenth Amendment of the United States Constitution." The School Board opposed the motion.

The trial court ruled that Quarles had been removed from office "without notice of charges justifying his dismissal and a hearing upon such charges," and that, therefore, the School Board had "failed to accord him procedural due process as required by the Fourteenth Amendment to the Constitution of the United States."

---

[1] In addition to the School Board, the other appellants are the individual members of the Bristol Virginia School Board, namely: Louise Bowdoin, Curtis Davis, O. G. Broome, Jr., John Snodgrass, and Jimmy Fleenor.

[2] Code § 22.1-65 reads as follows:

A division superintendent may be assessed a reasonable fine, suspended from office for a limited period or removed from office by either the Board of Education or the school board of the division for sufficient cause. A division superintendent may appeal to the appropriate circuit court any decision of the Board of Education or school board to assess a fine against him or to suspend or remove him from office and shall be entitled to a trial de novo on such appeal of whether there was sufficient cause therefor.

The court opined that "while [Quarles] has suffered no significant deprivation of a constitutionally protected property interest,[3] upon evidence replete in the record . . . , [he] has been deprived of his liberty interests." Finding that "no material fact is genuinely in dispute upon the issues raised by [Quarles'] Motion for Summary Judgment," the trial court granted the motion and "enjoined and directed [the School Board] to reinstate" Quarles as Superintendent on or before September 17, 1984, "unless [the School Board] should sooner give [Quarles] notice of the charges justifying his dismissal, and . . . notice of a hearing on [the] charges which shall be held on or before October 2, 1984."

The School Board objected to the court's actions, indicated its intention to appeal, and requested suspension of the execution of the judgment upon giving an appropriate appeal bond. The requested suspension of execution of the judgment was denied by the trial court. The School Board appeals.

The undisputed facts are derived from the pleadings and from the School Board's answers to interrogatories and responses to requests for admissions. Quarles was employed as Superintendent of Schools for the City of Bristol on July 1, 1973. He served in that office until he was removed by the School Board at its meeting held on December 12, 1983.

On December 12, 1983, the School Board discussed Quarles' removal in an executive session, which, by definition, was not open to the public. Code § 2.1-341(c). The School Board gave no notice to Quarles that his removal would be considered at the meeting, and Quarles was not present during the executive session.

After the executive session, but before reconvening the public session, the School Board privately informed Quarles of its intention to remove him and of the reasons for his removal. The School Board also offered Quarles an opportunity to respond at that time; however, he made no response.

Immediately thereafter, in accordance with Code § 2.1-344(c), the School Board adopted a motion in the reconvened public session to remove Quarles as Superintendent of Schools. The motion read as follows:

[3] The record shows that the School Board agreed to fully compensate Quarles for the remainder of his unexpired term. Therefore, the parties conceded, and the trial court ruled, that Quarles had not been deprived of a property interest.

That the Superintendent be relieved of his duties and responsibilities to the Bristol Virginia School Board effective immediately, due to ineffective leadership of the Superintendent with the Board, lack of communication with personnel, and for the betterment of the school system and the community as a whole.

In the executive session, the School Board arrived at six general reasons for Quarles' removal. These reasons, as stated in one of the School Board's answers to interrogatories, are as follows:

(a) [Quarles'] unwillingness or inability to carry out the directives and policies of the School Board;

(b) His failure to fairly and adequately communicate with the School Board, school personnel and the community, with respect to matters and occurrences affecting the proper operation of the School System;

(c) His unwillingness or inability to supply proper educational leadership for the School Board, the School System and the community;

(d) His unwillingness or inability to handle personnel matters within the School System in a dignified, fair and impartial manner;

(e) His failure to properly supervise the maintenance, use and repair of the physical plants of the School System; and

(f) The detrimental effect of the above on the efficient and effective operation of the School System, and on the morale of its employees.

Additional answers to interrogatories revealed that during the December 12, 1983 executive session, individual School Board members expressed other complaints, more specific in nature, about Quarles' performance. With the exception of the adopted motion, however, the School Board made no public statements concerning Quarles' removal.

Because the trial court ruled that Quarles was deprived of a liberty interest without procedural due process, we must determine (1) what must be shown to establish that a liberty interest has been implicated, and (2) whether the undisputed facts support the trial court's summary finding that Quarles was deprived of a liberty interest.

■ In *Board of Regents* v. *Roth*, 408 U.S. 564 (1972), the Supreme Court set forth two ways in which a liberty interest may be implicated. First, when a public employee is discharged by a public employer and contemporaneously therewith the employer makes false, public charges that reflect upon the employee's " 'good name, reputation, honor, or integrity,' "[4] the employee's liberty interests are implicated, and he has a constitutional right to notice and an opportunity to refute the charges. *Id.* at 573. A public employee is not deprived of a liberty interest, however, when his employment is simply terminated and no defamatory charges are publicly disseminated. *Id.* at 575.

Second, a liberty interest may be implicated if a public employer, in terminating a public employee, "impose[s] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities."[5] *Id.* at 573. The public employer may impose such a stigma by, for example, invoking regulations to bar the employee from other public employment. *Id.* at 574. Although the mere fact that an employee was not retained might make him somewhat less attractive to prospective employers, a record of nonretention does not establish the kind of foreclosure of employment opportunities amounting to a deprivation of liberty. *Id.* at 574 n.13.

■ A party's compelled answers to interrogatories during the course of litigation that are not otherwise made public, "cannot properly form the basis for a claim that [the public employee's] interest in his 'good name, reputation, honor, or integrity' was

---

[4] The *Roth* Court mentioned charges of dishonesty and immorality as examples of charges implicating the first type of liberty interest. The Court cited cases involving charges of alcoholism (*Wisconsin* v. *Constantineau*, 400 U.S. 433 (1971)); disloyalty (*Peters* v. *Hobby*, 349 U.S. 331 (1955) (Douglas, J., concurring); *Wieman* v. *Updegraff*, 344 U.S. 183 (1952)); communism (*Joint Anti-Fascist Refugee Committee* v. *McGrath*, 341 U.S. 123 (1951)); and subversive activities (*United States* v. *Lovett*, 328 U.S. 303 (1946)). The Court also included a reference to *Cafeteria Workers* v. *McElroy*, 367 U.S. 886 (1961), in which the Court held that requiring surrender of an identification badge necessary for access to a naval gun factory did not imply a charge of disloyalty.

[5] The authorities cited by the *Roth* Court under the second type of liberty interest include *Truax* v. *Raich*, 239 U.S. 33 (1915), a case in which the Court struck down a statute limiting the percentage of aliens that any employer could hire. The Court also cited two cases in which states had denied the petitioners admission to the bar, and which the Court reversed, *Willner* v. *Committee on Character*, 373 U.S. 96 (1963); *Schware* v. *Board of Bar Examiners*, 353 U.S. 232 (1957). The Court again referenced *Cafeteria Workers*, 367 U.S. at 898, in which the plaintiff had not been precluded from obtaining employment at any other government installation or anywhere in the private sector.

thereby impaired." *Bishop* v. *Wood*, 426 U.S. 341, 348 (1976). Because such answers are "made in the course of a judicial proceeding which did not commence until after [the public employee] had suffered the injury for which he seeks redress, it surely cannot provide retroactive support for his claim." *Id.*

In its memorandum opinion, the trial court stated that "the record in this case is replete with charges which could affect [Quarles] in his efforts to take advantage of other employment opportunities and which could damage his standing and associations in the community, thus bringing his liberty interests into the picture." Clearly, in order to find that the record is "replete" with charges that implicate Quarles' liberty interests, the trial court necessarily had to consider statements made by the School Board in its answers to Quarles' interrogatories. Quarles makes no claim that the specifics of discussions between School Board members in the executive session were publicized or made accessible to prospective employers. Indeed, Quarles concedes that the only information available to the public concerning his dismissal was the School Board's motion.

■ Thus, the trial court properly could consider only the charges enumerated in the motion that the School Board adopted in the reconvened public session. As previously noted, that motion charged Quarles with "ineffective leadership" and "lack of communication with personnel."

■ Since the Supreme Court handed down *Roth* in 1972, the federal courts have had many opportunities to refine and apply the general guidelines set forth in that decision. The cases in which federal courts have found a liberty interest implicated usually involved specific charges of moral turpitude, criminal activity, or serious character defects. *See, e.g., Bartholomew* v. *Fischl*, 782 F.2d 1148, 1150 (3d Cir. 1986) (dishonesty); *Burkhart* v. *Randles*, 764 F.2d 1196, 1199-1201 (6th Cir. 1985) (involvement in scheme to bug supervisor's office); *Doe* v. *United States Dept. of Justice*, 753 F.2d 1092, 1111-12 (D.C. Cir. 1985) (unprofessional conduct and dishonesty); *Walker* v. *United States*, 744 F.2d 67, 69-70 (10th Cir. 1984) (lying on government employment application); *Clemons* v. *Dougherty County, Ga.*, 684 F.2d 1365, 1373 (11th Cir. 1982) ("maintained hostile relations with . . . neighbors, provoked fights, and improperly used police facilities to investigate a neighbor's criminal record"); *Rodriguez de Quinonez* v. *Perez*, 596 F.2d 486, 489-90 (1st Cir.) (dishonesty), *cert. denied*, 444

U.S. 840 (1979); *Graves* v. *Duganne*, 581 F.2d 222, 223 (9th Cir. 1978) ("lack of acceptance by the community of [teacher's] out-of-school activities and the example [set] for the young people . . . with [teacher's] personal behavior"); *Colaizzi* v. *Walker*, 542 F.2d 969, 971, 974 (7th Cir. 1976) (attempt to use power of office to force company under supervision to drop possible criminal actions against company employee), *cert. denied*, 430 U.S. 960 (1977); *Rolles* v. *Civil Service Commission*, 512 F.2d 1319, 1326 (D.C. Cir. 1975) (fraud and dishonesty); *Lombard* v. *Board of Education of City of New York*, 502 F.2d 631, 637 (2d Cir. 1974) (mental illness), *cert. denied*, 420 U.S. 976 (1975); *McNeill* v. *Butz*, 480 F.2d 314, 319-20 (4th Cir. 1973) (fraud); *Suarez* v. *Weaver*, 484 F.2d 678, 679, 681 (7th Cir. 1973) (possible violation of narcotics laws); *Wellner* v. *Minnesota State Junior College Board*, 487 F.2d 153, 156 (8th Cir. 1973) (manifest racism).

Cases in which federal courts have found no liberty interest implicated generally involved unelaborated charges relating to job performance. *See, e.g., Harrison* v. *Bowen*, 815 F.2d 1505, 1518 (D.C. Cir. 1987) ("unsatisfactory job performance"); *Robb* v. *City of Philadelphia*, 733 F.2d 286, 294 (3d Cir. 1984) (transfer and nonpromotion allegedly based on employee's union activity, statements to press, or refusal to withdraw private lawsuit against well-known person); *Debose* v. *United States Dept. of Agr.*, 700 F.2d 1262, 1266 (9th Cir. 1983) (substandard performance); *Smith* v. *Bd. of Educ. of Urbana Sch. Dist. No. 116*, 708 F.2d 258, 265 (7th Cir. 1983) ("profanity, lack of respect, problems with discipline, fairness"); *Bunting* v. *City of Columbia*, 639 F.2d 1090, 1094-95 (4th Cir. 1981) (services did not meet expectations of police department); *Nathanson* v. *United States*, 630 F.2d 1260, 1265 (8th Cir. 1980) (failure "to demonstrate the necessary qualifications for successful performance [of] position," due to "inability to accept guidance and direction" and "poor judgment in coordinating . . . activities"), *cert. denied*, 464 U.S. 939 (1983); *Ventetuolo* v. *Burke*, 596 F.2d 476, 483-84 (1st Cir. 1979) (insubordination and hostility); *Ball* v. *Board of Trustees of Kerrville Independent School Dist.*, 584 F.2d 684, 685 (5th Cir. 1978) (refusal to shave beard), *cert. denied*, 440 U.S. 972 (1979); *Mazaleski* v. *Treusdell*, 562 F.2d 701, 710, 714 (D.C. Cir. 1977) (marginal and substandard performance); *Stretten* v. *Wadsworth Veterans Hospital*, 537 F.2d 361, 363, 366 (9th Cir.

1976) (unsatisfactory performance and "other considerations"); *Gray* v. *Union County Intermediate Education District*, 520 F.2d 803, 806 (9th Cir. 1975) (nonrenewal due to "student and parent problems," insubordination, incompetence, hostility toward authority, aggressive behavior); *Lake Mich. Col. Fed. of Teach.* v. *Lake Mich. Com. Col.*, 518 F.2d 1091, 1097-98 (6th Cir. 1975) (alleged violation of state no-strike law), *cert. denied*, 427 U.S. 904 (1976); *Abeyta* v. *Town of Taos*, 499 F.2d 323, 327-28 (10th Cir. 1974) (improper and substandard job performance); *Adams* v. *Walker*, 492 F.2d 1003, 1008-09 (7th Cir. 1974) (unelaborated charge of "incompetence, neglect of duty and malfeasance in office," tracking language of state constitutional provision); *Blair* v. *Board of Reg. of State Univ. & Com. Col. Sys., Tenn.*, 496 F.2d 322, 324 (6th Cir. 1974) (teacher's "professional relationships with individual students . . . fail[ed] to meet minimum standards"); *Jeffries* v. *Turkey Run Consolidated School District*, 492 F.2d 1, 2-3 (7th Cir. 1974) ("highly unethical conduct" of openly contradicting directives given to students by fellow teacher); *Russell* v. *Hodges*, 470 F.2d 212, 215 n.2, 217 (2d Cir. 1972) (sleeping on duty, unauthorized absence from post, wearing improper attire).

█ Our examination of this area of federal jurisprudence leads us to conclude that the reasons publicly given for Quarles' dismissal were simply not the type of charges that "might seriously damage his standing and associations in his community." *Roth*, 408 U.S. at 573. Nor do we think the charges carry with them the sort of stigma that would foreclose "his freedom to take advantage of other employment opportunities." *Id*. The School Board's charges of "ineffective leadership" and "lack of communication with personnel" do not involve moral turpitude or even an intrinsic character defect. Rather, these unelaborated charges relating to job performance suggest a situational difficulty that, as part of Quarles' biography, "invites inquiry, not prejudgment." *Harrison* v. *Bowen*, 815 F.2d at 1518.

Quarles further contends that the judgment was rendered moot by the events that transpired after the judgment was entered. We do not agree.

As previously noted, the court ordered the School Board either to reinstate Quarles as superintendent or to give him a hearing after proper notice within a specified time. Moreover, the trial court refused the School Board's request for a stay of execution of

the judgment pending an appeal. Therefore, the School Board was compelled to comply with the court's order.

■ Because "the matter is of sufficient importance to justify" a decision on appeal, *Cox v. City Council of Bristol*, 144 Va. 286, 296, 132 S.E. 187, 190 (1926), we hold that the summary judgment has not been rendered moot. To hold otherwise would leave in place an erroneous adjudication that the School Board deprived Quarles of a constitutionally protected right. *Cf. Roush v. Board of Education*, 128 W.Va. 150, 154, 35 S.E.2d 850, 851 (1945).

We conclude, therefore, that the trial court erred in granting summary judgment for Quarles. Accordingly, we will reverse the judgment of the trial court and dismiss Quarles' first Code § 22.1-65 petition.

## II

### *THE SECOND APPEAL* (Record No. 850569)

Following entry of the summary judgment in the first case, the School Board gave Quarles notice of a hearing to consider his removal from office based upon 13 enumerated charges. After a four-day public hearing, the School Board voted unanimously to remove Quarles from office. The School Board found sufficient evidence to support all but one of the charges. The Board also voted to continue to pay Quarles full compensation and fringe benefits for the remaining 18½ months of his unexpired term of office.

Pursuant to Code § 22.1-65, Quarles appealed the School Board's decision to the trial court. After a four-day trial, the court found that the evidence "fails to show sufficient cause to terminate the employment of Quarles as Division Superintendent" and ordered that he be reinstated to the office, effective March 27, 1985. The School Board immediately filed a notice of appeal to the Court of Appeals and posted the required suspending bond. Pursuant to Code § 17-116.06(B), we certified the case to this Court.

In this appeal, we must determine whether (1) under Code § 22.1-65 the trial court applied the correct standard of review in deciding Quarles' appeal of the School Board's decision, and (2) the trial court erred in failing to find that the School Board had sufficient cause to remove Quarles.

## A

We first will determine the standard of review applicable to an appeal from a school board's decision under Code § 22.1-65. That section provides, in pertinent part:

A division superintendent may be . . . removed from office by . . . the school board of the division for sufficient cause. A division superintendent may appeal to the appropriate circuit court any decision of the . . . school board to . . . remove him from office and shall be entitled to a trial de novo on such appeal of whether there was sufficient cause therefor.

Quarles contends that because Code § 22.1-65 provides for a trial *de novo*, the trial court correctly gave him "a new trial from the beginning, with no considerations or presumptions regarding heretofore presented evidence or actions of the parties." In making this assertion, Quarles concedes that the trial court made a totally independent judgment of the evidence.

The School Board contends, on the other hand, that Code § 22.1-65 does not authorize a trial court to substitute its judgment for that of a school board. The School Board asserts that the court must sustain a school board's decision "unless [the court] finds that the Board acted in bad faith, arbitrarily, capriciously or in abuse of its discretion, or that there is no substantial evidence to sustain the Board's action."

■ Both the Constitution of Virginia and the corresponding statute mandate that "[t]he supervision of schools in each school division shall be vested in a school board." Va. Const. art. VIII, § 7; Code § 22.1-28; *see also School Board* v. *Parham*, 218 Va. 950, 243 S.E.2d 468 (1978); *Howard* v. *School Board*, 203 Va. 55, 122 S.E.2d 891 (1961); *Kellam* v. *School Board*, 202 Va. 252, 117 S.E.2d 96 (1960); *Harrison* v. *Day*, 200 Va. 439, 106 S.E.2d 636 (1959). Consistent therewith, a school board appoints the division superintendent, Code § 22.1-60, and, in the exercise of its discretion, may remove him from office for "sufficient cause," Code § 22.1-65.

■ In *Spotsylvania School Board* v. *McConnell*, 215 Va. 603, 212 S.E.2d 264 (1975), we held that a school board's decision "will not be disturbed by the courts unless the board acted in bad faith, arbitrarily, capriciously, or in abuse of its discretion, or there is no substantial evidence to sustain its action." *Id.* at 607,

212 S.E.2d at 267. We said this rule applies even when a court reviews a school board's decision in a trial *de novo*. *Id*. at 606-07, 212 S.E.2d at 267.

When we decided *McConnell*, the General Assembly had not enacted a statute "governing the scope of review by the courts of an appeal from a school board's decision" regarding personnel matters. *Id*. at 606, 212 S.E.2d at 267. Although Code § 22.1-65 provides for a trial *de novo*, the statute also limits the trial *de novo* to the question whether a school board had "sufficient cause" to remove a superintendent. We believe, therefore, that Code § 22.1-65, enacted in 1980, Acts 1980, c. 559, is not inconsistent with our holding in *McConnell*. Thus, we hold that the trial court applied the incorrect standard in Quarles' appeal from the decision of the school board.

## B

Applying the correct standard of review, we next will determine from the evidence whether the School Board had sufficient cause to remove Quarles. The evidence is voluminous, and much of it is conflicting. We will, however, confine our review of the evidence to the three areas in which the underlying facts are essentially undisputed.

## 1

### *Improper Expenditures of School Funds.*

Undisputed, documentary evidence established that between April 1982 and November 1983, Quarles, accompanied by his wife, attended eight professional meetings in distant places. Either all or part of his wife's travel expenses for these trips were paid from school funds. Additionally, Quarles admitted that this had been his practice since he had held the office of superintendent — approximately 10½ years.

Although Quarles testified that he had "assum[ed]" that the School Board was aware of this practice, the record does not support this assumption. To the contrary, the practice was not known until discovered by the present school board shortly before Quarles was removed from office.

In its memorandum opinion, the trial court stated "without equivocation, that absent express approval of an authoritative body (in this case the School Board) the use of public funds to

pay the expenses of spouses of public employees is not appropriate and cannot be condoned." The trial court, however, rejected the School Board's finding that this conduct constituted sufficient cause for Quarles' removal, stating that the court "[does] not find dishonest intent in this case nor [does it] find that the interests of the Board have been adversely affected in a significant way."

To constitute sufficient cause for Quarles' removal, the School Board was not required to prove that Quarles acted with "dishonest intent." It was required to prove only that Quarles knowingly used public funds for a purpose not authorized by law.

Code § 22.1-67 provides that a school board "shall provide for the necessary traveling . . . expenses of the division superintendent," who shall keep "[d]etailed records of all such expenses." The *Regulations of the Board of Education of the Commonwealth of Virginia*, Chapter I, "Division Superintendent of Schools," Section V (1980) (the Regulations), provide that "[i]t shall be the duty of the division superintendent to . . . see that . . . all school funds are properly applied."

Unquestionably, Quarles knowingly paid his wife's expenses from school funds. Because he held the office of Superintendent of Schools, Quarles knew or should have known that paying his spouse's travel expenses was not authorized by law. Clearly, in using school funds for such a purpose, Quarles failed in his duty to see that these funds were "properly applied." We conclude, therefore, that the evidence supports the School Board's finding that Quarles improperly expended school funds.

2

*Neglect of School Buildings and Grounds.*

Section VIII of the Regulations states that "[i]t shall be the duty of the division superintendent to visit and inspect each school in his division. He . . . shall give particular attention to the conditions of the school buildings." The Bristol, Virginia School Board Policy Manual, Section 3-2.3(7), provides in pertinent part that "[t]he Superintendent shall supervise the use and maintenance of all school buildings and grounds."

The evidence established that during Quarles' tenure as superintendent, the school buildings and grounds had been neglected and allowed to reach a serious state of disrepair and deterioration. Curtis Davis became a member of the School Board on July 1,

1983, and was made chairman of the Buildings and Grounds Committee. During that month, he discovered these conditions, some of which presented a danger to the safety of students and others coming upon the premises.

Davis was so shocked by the conditions of the school properties that he immediately took steps to correct the problems. The trial court commended Davis "for identifying the needs addressed and marshalling the support necessary to fund the repairs."

Quarles defended this charge of neglect by claiming that funds were not available for the needed repairs. The record shows, however, that almost all repairs made under the direction of Davis were accomplished by the use of previously budgeted maintenance funds.

### 3

*Failure to Carry Out School Board Directives.*

The evidence established that, with respect to two matters, Quarles failed to carry out School Board directives. The first matter involved accreditation of Douglass Elementary School. The School Board adopted a plan to have it accredited. After a two-year study had been completed and reported to Quarles, he summarily ended any further work on accrediting the school. As a result, the school had not been accredited at the time of Quarles' removal.

The second matter involved implementation of a School Board resolution that ordered the installation of a comprehensive educational program for those students who chose not to participate in the Bible school program for fourth and fifth grades. Although Quarles acknowledged that he was responsible for the program's implementation, the evidence clearly shows that he never effectively implemented it.

### C

We conclude that the evidence presented to the trial court in the three areas previously discussed supports the School Board's finding of a sufficient cause to remove Quarles. Moreover, nothing in the record suggests that the Board acted in bad faith, arbitrarily, capriciously, or in abuse of its discretion. Thus, the trial court was plainly wrong in failing to sustain the School Board's decision. Accordingly, we will reverse the judgment of the trial court

in the second appeal and enter final judgment for the School
Board.

Record No. 841780 — *Reversed and dismissed.*
Record No. 850569 — *Reversed and final judgment.*