122

## CIRCUIT COURT OF CAROLINE COUNTY

Nationwide Insurance Co.

v.

Lucille Martin et al.

June 30, 1998

Case No. CH97-012

BY JUDGE WILLIAM H. LEDBETTER, JR.

In this declaratory judgment action involving an automobile liability insurance policy, an insurer asks the court to determine whether the insured breached a policy condition by failing to notify the insurer of the accident and, if so, whether the insurer subsequently gave timely notice to the claimant of its intention to rely on the breach in defense of a claim under the policy. In addition, the insurer asks the court to hold that the claim is not covered by the policy because the injuries of the claimant did not arise out of the operation, maintenance, or use of the insured vehicle.

### Facts

Most of the pertinent facts are undisputed.

The accident that gives rise to this litigation occurred on September 5, 1995, at the home of Lucille Martin in Bowling Green. Lucille Martin lived there with her adult son, Darain Martin. On that day, Darain Martin's girlfriend, Dorothy Winston, was visiting with her two preschool-aged children, Lynette and Darain, Jr. Darain Martin is the children's father.

That afternoon, Lucille Martin and Darain Martin went to the laundromat. They travelled in Lucille Martin's 1984 Oldsmobile, a vehicle insured by Nationwide. Lucille Martin drove. Upon their return home, Lucille Martin

parked the car in the driveway, and both parties went to the trunk to remove their wash.

As they were retrieving their washed clothes from the car trunk, Dale Ann Martin, Lucille Martin's adult daughter, arrived with her preschool-aged daughter, Kendra.

Lucille Martin and Dale Ann Martin went into the house with Lucille Martin's basket of clothes. Lucille Martin took her clothes into her bedroom. Darain Martin went to the clothesline to hang his clothes to dry.

Winston was inside the house.

Scarcely noticed by any of the adults, Lynette and Darain, Jr., went out of the house to play with Kendra as Lucille Martin and Dale Ann Martin went inside.

Moments later, Lynette screamed. Darain Martin turned from hanging his clothes to discover that Lucille Martin's car was rolling backward. The driver's door was open, and Darain, Jr., was in the driver's seat. Kendra was running alongside the car, apparently attempting to avoid being struck. As Darain Martin ran toward the car, the car struck Kendra. She sustained serious injuries.

According to the evidence which includes the deposition testimony of Lucille Martin, Darain Martin, and Dale Ann Martin, by agreement of counsel, the car engine was not running, but the keys had been left in the ignition. No one can say whether Lucille Martin had left the driver's side door open when she got out of the car. After the car rolled against a metal bench and stopped, Darain Martin picked up Kendra and shouted for the others to call for help. He then removed Darain, Jr., from the car. He noticed that the ignition key was in the car; the engine was not running; and the gear shift had been "pulled down just a little bit," perhaps "about two notches or middle way," out of the park position.

The rescue squad took Kendra to the hospital. Virginia State Police officers arrived and questioned the adults about the accident. No one was charged.

Lucille Martin did not report the accident to Nationwide. Several months after the accident, Dale Ann Martin advised Lucille Martin that she should notify her insurance company of the incident. Dale Ann Martin repeated this advice to her mother on at least two subsequent occasions. Lucille Martin never notified Nationwide because she "didn't want to think about it."

Nationwide first learned of the accident when it received a letter dated May 16, 1996, from Kendra's attorney.

On May 23, 1996, Jacquelyn Walker, a Nationwide claims representative, telephoned that attorney's office in response to the letter. She spoke with

Janice Klein, the attorney's legal assistant handling the claim. She informed Klein that Nationwide knew nothing about the accident and asked for information regarding the claim. Walker told Klein that Nationwide "would probably" notify all parties of its reservation of rights "due to the late notice ... ." Walker followed up the telephone call by letter of June 18, 1996, asking the attorney for medical information.

Meanwhile, Walker attempted to contact Lucille Martin, the insured. Telephone calls were made on May 29, 1996, June 4, 1996, and June 17, 1996. Walker interviewed Lucille Martin on June 18, 1996. Lucille Martin explained the circumstances of the incident and admitted that she had made no attempt to notify Nationwide even though her daughter had urged her to do so.

On July 17, 1996, Nationwide sent a reservation of rights letter to Lucille Martin, with a copy to Kendra's attorney.

On January 9, 1997, Kendra filed an action for personal injuries against Lucille Martin and Darain Martin. That case (CL97-001) is pending in this court.

On January 27, 1997, Nationwide instituted this declaratory judgment action. It amended its pleadings twice, and the parties engaged in discovery, before the case went to trial without a jury on March 27, 1998. The court took the case under advisement pending submission of memoranda. The last of the post-trial memoranda was received on May 28, 1998. This opinion addresses all issues.

### Failure to Provide Timely Notice to Insurer

Nationwide's policy of insurance requires that in the event of an accident. occurrence, or loss, written notice must be given "by or for the insured" to the insurer or one of its agents "as soon as practicable" with respect to the "time, place, and circumstances" of the incident and the identity of the injured party.

Neither Lucille Martin nor anyone on her behalf ever notified Nationwide or its agents about the incident.

It is well settled that performance under the notice provision of an insurance policy is a condition precedent to coverage that requires substantial compliance by the insured. Such a provision is customary, reasonable, and enforceable. Whether notice has been given to the insurer "as soon as practicable" after the accident depends on the facts and circumstances of each case. *State Farm Fire and Cas. Co. v. Scott*, 235 Va. 116 (1988); *Liberty Mut. Ins. Co. v. Safeco*, 223 Va. 317 (1982); *State Farm v. Porter*, 221 Va. 592 (1980); *see also* 10B M.J., *Insurance*, § 155, pp. 246-254.

The insurer does not have to establish that it is prejudiced by the insured's failure to comply with the notice provision. *Liberty Mutual v. Safeco, supra.* Some authorities interpret Virginia law as holding that prejudice is implicit in the insurance company's ignorance of the accident. *See* 10B M.J., *supra*, at p. 247. Others observe that prejudice is a circumstance that a court should consider in determining the substantiality or materiality of the delay in giving notice. *See, e.g., State Farm v. Scott, supra.*

In this case, the court is of the opinion that the notice provision in Lucille Martin's policy with Nationwide, a condition precedent with respect to coverage, was breached.

Lucille Martin is a high school graduate. She was 58 years old at the time of the accident, she held a full time job, and she was fully aware that Nationwide was her automobile insurance carrier. She was aware that Kendra suffered significant injuries in the accident. She was aware that she should report the accident to Nationwide. But she never did. She "didn't want to think about it," although her daughter told her two or three times that she should notify her insurer. Even after her daughter discussed litigation in the spring of 1996, Lucille Martin failed to notify Nationwide of the impending claim.

Nationwide first learned of the occurrence, and Kendra's claim, from Kendra's attorney almost nine months after the accident. This lapse of time far exceeds the periods of delay reported in many of the appellate court decisions in which a breach of the notice requirement voided coverage under the policy.

As noted above, Nationwide does not have to establish prejudice. Taking the prejudice factor into consideration, however, the court cannot help but note the number of times that the witnesses said "I cannot remember," or something similar, when their depositions were taken in 1997 and wonder whether their memories would have improved, or at least perpetuated, if the insurer had been given the opportunity to investigate within a reasonable time after the incident occurred.

### Waiver of the Breach Because of Insurer's Non-Compliance with § 38.2-2226

The defendants argue in the alternative that even if the policy condition was breached, Nationwide waived the breach by failing to comply with Virginia Code § 38.2-2226. Pertinent to this case, the statute provides:

> Whenever any insurer on a policy of liability insurance discovers a breach of the terms and conditions of the insurance contract by the insured and the insurer intends to rely on the breach in defense of

liability for any claim within the terms of the policy, the insurer shall notify the claimant or the claimant's counsel of record of its intention to rely on the breach as a defense. Notification shall be given within twenty days[1] after discovery by the insurer or any of its agents of the breach or of the claim, whichever is later.

This case is governed by the holding in *Liberty Mutual v. Safeco, supra.* There, the Court said that discovery of a breach entails, first, awareness by the insurer of "facts tending to show there has been a violation of the policy" and, second, "evaluation of those known facts culminating in a decision that a breach apparently has occurred."

In this case, Nationwide first became aware of facts "tending to show" there had been a violation of the policy's notice provision when it received the letter from Kendra's attorney in mid-May, 1996. However, as *Liberty Mutual v. Safeco* explains, that is *not* the date from which the § 38.2-2226 notice period runs. The insurer also must be allowed time to "evaluate" the known facts and to make a decision that a breach has occurred. Otherwise, as the Court noted, an insurer would be required to deny coverage immediately in every case when it learns of an accident from a source other than its insured.

After receiving notice from the claimant's attorney, Nationwide's claims representative immediately proceeded to investigate by attempting to contact its insured, Lucille Martin. Finally, on June 18, 1996, Walker, the claims representative, was able to speak with her about the incident and thereby gather facts so that the matter could be realistically evaluated.[2] Fifteen days later, on July 3, 1996, Walker met with persons empowered to make decisions regarding coverage. All of the known facts were reviewed and analyzed, and on July 17, 1996, a decision to deny coverage, i.e., to send a reservation of rights letter, was made. On that day, Walker faxed the document to Kendra's attorney and mailed a letter to Lucille Martin with a copy of the letter to Kendra's attorney.

Kendra's attorney first received notice of Nationwide's intention to rely on the policy defense on May 23, 1996, in Walker's telephone conversation with the attorney's legal assistant. Although Walker's statement was not firm or final, it put the claimant on notice that a coverage problem existed and that

---

[1]  In 1997, the General Assembly amended the statute to establish a forty-five day deadline.

[2]  Even then, Nationwide was not aware of the particulars because Lucille Martin had not seen the accident.

Nationwide intended to pursue an investigation of it. The claimant had not filed suit and, in fact, did not do so until more than six months later.

The court is of the opinion that Nationwide complied with § 38.1-2226 and did not waive its policy defense.

### Use of the Automobile at the Time of the Accident

The insurance policy obligates Nationwide to pay all sums that the insured becomes legally obligated to pay as damages because of personal injury sustained by any person arising out of the ownership, maintenance, or use of the owned vehicle.

Nationwide contends that Lucille Martin's vehicle was not being "used" at the time of the accident.

The word "use," like other terms of an insurance contract, should be given its natural and ordinary meaning in light of the subject matter, i.e., automobile liability insurance, in determining the scope of coverage afforded. Further, there must be a causal relationship between the incident and the employment of the automobile as a motor vehicle. *State Farm v. Powers*, 227 Va. 492 (1984); *also see Travelers Ins. Co. v. LaClair*, 250 Va. 368 (1995); *United States Fire Ins. Co. v. Parker*, 250 Va. 374 (1995); *Lexie v. State Farm*, 251 Va. 390 (1996); *Randall v. Liberty Mutual*, 255 Va. 62 (1998).

The defendants agree that the "use" of the vehicle must be in a manner for which it was intended. However, they argue that the vehicle was being used as a motor vehicle at the time Kendra was injured because Lucille Martin and Darain Martin were in the process of "unloading." Clearly, an injury incurred while a vehicle is being unloaded can, under certain circumstances, arise out of the "use" of the vehicle as a motor vehicle. *See State Farm v. Rice*, 239 Va. 646 (1990). The defendants also point out that the claim is not against Darain Martin, Jr., a toddler, but against Lucille Martin and Darain Martin.

Regardless of the claimant's theory of recovery, the "incident" which everyone acknowledges must be "causally related" to "employment of the automobile as a motor vehicle" is the act of Darain Martin, Jr., climbing into the car and somehow causing it to roll backward. At that time, was the vehicle being used as a motor vehicle? The court is of the opinion that it was not.

The facts do not support the defendants' contention that Lucille Martin and/or Darain Martin were using the vehicle in any manner when the incident occurred. According to the testimony of the witnesses, both Lucille Martin and Darain Martin had removed themselves and their baskets of washed clothes from the vehicle. The car was in the driveway with the engine off and in park. Darain Martin had gone to the clothesline to hang out his clothes. Lucille

Martin had gone into the house with her daughter (Kendra's mother), Dale Ann Martin. She had placed her basket of wash in her bedroom. Dorothy Winston also was in the house. As Lucille Martin and Dale Ann Martin went into the house, Darain Martin, Jr., and his sister, Lynette, went out into the yard to play with Kendra. Lucille Martin was on her way out of the house *"to go back to get the kids"* when the accident happened.

From these undisputed facts, one cannot infer that Lucille Martin and/or Darain Martin were still in the process of unloading the car, or otherwise using it, at the time of the accident. The fact that Lucille Martin had inadvertently left her keys in the ignition ("I never leave the keys in my car"; "I didn't intend to leave the keys in the car"), or the fact that she may have left her car door open or ajar, adds nothing to the analysis in light of her testimony, Dale Ann Martin's testimony, and Darain Martin's testimony about the sequence of events that immediately preceded the accident.

Although there is no Virginia case specifically involving a child climbing into an unattended vehicle and causing injury to another, the authorities cited by Nationwide are persuasive. *See State Farm v. O'Brien*, 380 F. Supp. 1279 (W.D. Minn. 1974); *Tucker v. State Farm*, 154 So. 2d 226 (La. 1963); *Erie Ins. Ex. v. Transamerica Ins. Co.*, 533 A.2d 1363 (Pa. 1987).

Accordingly, the court holds that Nationwide does not owe coverage for Kendra's injuries because they did not arise out of ownership, maintenance, or use of Lucille Martin's vehicle.

### Conclusion

Judgment will be entered in favor of Nationwide on its second amended pleading, for the reasons explained above.